590 A.2d 384

**FRATERNAL ORDER OF POLICE LODGE NO. 5, Appellant,**

**v.**

**CITY OF PHILADELPHIA, Willie L. Williams, Orville Jones, George Craig, Eugene Dooley, John McLees, Richard Neal, Raymond Rooney, Thomas Seamon, Thomas Doyle, Dexter Green, Albert Harris, Sylvester Johnson, Alan Lewis, Francis Pryor, Carl Bittenbender, Lawton Connelly, Appellees.**

Commonwealth Court of Pennsylvania.

Argued April 4, 1991.

Decided April 19, 1991.

Reargument Denied June 5, 1991.

258

Richard A. Sprague, with him, J. Shane Cramer, Thomas A. Sprague, David R. Dearden and Denise Pallante, Philadelphia, for appellant.

Susan Shinkman, Divisional Deputy City Sol., with her, Steven K. Ludwig, Deputy City Sol., Philadelphia, for appellees.

John W. Morris, Philadelphia, for intervenors/appellees.

Before CRAIG, President Judge, DOYLE, J., and BARRY, Senior Judge.

DOYLE, Judge.

This is an appeal by the Fraternal Order of Police Lodge No. 5 (FOP) from an order of the Court of Common Pleas of Philadelphia County which denied FOP's request for a pre-

liminary injunction [1] prohibiting appellees, the City of Philadelphia, Willie L. Williams, Police Commissioner of the City, and Orville Jones, Personnel Director of the City, from making any further appointments to the positions of Inspector and Chief Inspector of the City Police Department "unless it is from the most recent eligible lists or from lists obtained through future examination procedures." Plaintiff's Amended Complaint pp. 14–15. FOP also asked the Chancellor to declare null and void the January 9, 1991 appointments of six Inspectors to the rank of Chief Inspector and the appointment of eight Captains to the rank of Inspector and to order Commissioner Williams to either make his selection from an outdated eligibility list or to announce and conduct examinations for positions of Chief Police Inspector and Inspector "forthwith." Plaintiff's Amended Complaint p. 15.

The relevant facts in this case appear to be largely undisputed. On January 9, 1991 Commissioner Williams requested that fourteen individuals be given "temporary appointments," six to the rank of Chief Inspector and eight to the rank of Inspector.[2] Personnel Director Jones approved the request. The "Eligible Lists" for both positions had expired on May 4, 1990. From that time until the instant lawsuit was commenced no examinations have been conducted for either of the positions at issue. Such examinations would be a necessary prerequisite to creating new eligibility lists.[3]

Where there is no current eligibility list, the City's Civil

1. The parties stipulated that the injunction would be treated as a permanent one. See Trial Court Finding of Fact No. 3.

2. These fourteen individuals are the intervenors in the instant litigation.

3. We were informed at oral argument on April 4, 1991, that the process has begun for conducting the examinations for the period in question. The Chancellor had found that the City's Personnel Department had announced on January 16, 1991, that the written component for the ranks of Chief Inspector and Inspector would be given on March 23, 1991 and April 6, 1991, respectively. Finding number 35.

Service Regulations [4] provide for temporary appointments. A "temporary appointment" is defined in Section 2.47 as:

[A]n appointment for not longer than six months in any twelve (12) month period *to a position established for a short limited period.* (Emphasis added.)

And, the limited duration of temporary appointments is further explained in Section 12.02 as:

*TEMPORARY APPOINTMENTS.* Whenever an appointing authority deems a temporary position necessary for a limited period not to exceed six (6) months, he shall so advise the Director, stating the duration of such period, the rate of compensation, and the duties to be performed. If, in the judgment of the Director, the position is in fact of a temporary nature, he shall certify the name of the person highest on an appropriate eligible list who is willing to accept temporary appointment. If there is no person whose name is on the appropriate list who is willing to accept appointment, the Director shall certify for such temporary service any person he deems qualified. The acceptance or refusal by an eligible person of a temporary appointment shall not affect his standing on the eligible list for permanent appointment. If at any time it becomes evident that the need for the temporary position will extend beyond six (6) months, the position shall, if further authorized, be made permanent and shall be filled by certification and appointment in the same manner as other permanent positions. No person shall serve as a temporary appointee for longer than six (6) months in any twelve (12) month period. This limit may be restricted to a shorter time period at the discretion of the Director. Experience gained as a temporary appointee shall in no way vary the order of certification for permanent appointment, nor shall a period of temporary service be counted as a part of the probationary service in case of subsequent appointment to a permanent position,

---

4. The regulations were promulgated pursuant to the authority set forth in Section 7.7–401 of the City's Home Rule Charter. 351 Pa. Code § 7.7–401.

except as may be otherwise provided in the Regulations. The acceptance of a temporary appointment shall not confer upon the appointee any rights of permanent status, transfer, promotion, or reinstatement.

A "provisional appointment" on the other hand, is defined in Section 2.40 of the Philadelphia Civil Service Regulations as:

> [A]n appointment for not longer than ninety (90) days in any twelve month period, in the absence of an eligible list, of a person who meets the minimum qualifications for the class *and who has not been qualified for City employment through the established examination and certification procedures.* (Emphasis added.)

Section 12.01 of the Philadelphia Civil Service Regulations further elucidates on the limited term of such an appointment as follows:

> *PROVISIONAL APPOINTMENTS.* Whenever there is urgent need for filling a vacancy in any position in the Civil Service and the Director is unable to certify an eligible therefor, he may authorize the filling of the positions by provisional appointment. In order to be eligible for provisional appointment a person must possess the necessary education, experience and other qualifications as set forth in the specification for the class concerned. A provisional appointment shall continue for not more than thirty (30) days after the Director has certified eligibles for the position but in no event for more than ninety (90) days in any twelve (12) month period. The acceptance of a provisional appointment shall not confer upon the appointee any rights of permanent status, transfer, promotion or reinstatement.

> 12.011 In the event that a provisional appointment expires before an eligible list is established for the class in which the provisional appointment was granted, the Director, upon request of the appointing authority, may authorize the continuance of the incumbent in the position as a temporary appointee for six months or until such time as the eligible list is established, which-

ever period is shorter. In such cases, the employee will continue to receive the benefits to which he was entitled had he continued as a provisional appointee.

The trial court found that Commissioner Williams originally sought to appoint the fourteen individuals as "provisional" rather than "temporary." The Personnel Department determined that because eight of the individuals were "several weeks short of meeting the experience requirement" for their respective classes they could not be provisionally appointed. Personnel Director Jones, therefore, recommended that all fourteen appointments be classified as temporary. Accordingly, Commissioner Williams officially requested from Personnel Director Jones the approval of all fourteen intervenors as "temporary appointments" and Personnel Director Jones approved the request.

The trial court determined, *inter alia*, that the appointments could not qualify as temporary because a temporary appointment must be to a position established for a short, limited period and the positions in question did not meet this standard. The Chancellor concluded, however, that provisional appointments *could have been* properly made in the case of three promotions to Chief Inspector and three promotions to the rank of Inspector (six out of the fourteen). The Chancellor then determined that the remaining eight intervenors who were not eligible for provisional promotion because they lacked the required time-in-grade qualification *could have been* granted a thirty-day temporary change in assignments pursuant to Section 5.11 of the Regulations, thus providing them with the lacking but necessary time-in-grade missing qualification, and then *could have been* promoted as provisional appointees on February 8, 1991. The Chancellor therefore denied FOP injunctive relief and this appeal ensued.

On appeal we are asked to annul the promotions and, more specifically, to determine whether the trial court erred in holding that the appointments qualified as valid ones under the provisional appointments provision.

In cases involving a permanent injunction our scope of review is limited to determining whether the trial court abused its discretion or committed an error of law. *Township of East Bradford v. Champaine* 26 Pa.Commonwealth Ct. 168, 362 A.2d 1117 (1976). The Chancellor is the ultimate finder of fact and especially where credibility is concerned his findings are entitled to great weight. *Peugeot Motors of America, Inc. v. Stout,* 310 Pa.Superior Ct. 412, 456 A.2d 1002 (1983).

We conclude first that the Chancellor committed no error in ruling that "the 'temporary appointments' of [the intervenors] do not legally comply with Civil Service Regulation 12.02" inasmuch as he found as fact that the *positions* had not been established for a limited short period. The Chancellor's finding is supported by the testimony of Commissioner Williams himself and will not be disturbed on appeal.

We next consider whether the appointments can properly be characterized as "provisional." On this point we must disagree with the Chancellor. The definition of provisional appointment clearly contains the qualifying language that the selectee "has not been qualified for City employment through the established examination and certification procedures." There is no dispute that the fourteen individuals promoted here were within the civil service system as they had been lower ranking officers in the City's Police Department. The City argues that the logical interpretation of the above-quoted language is that it refers only to a person not on a current eligibility list for that particular class. We acknowledge that the City's interpretation of its own regulations is controlling unless that interpretation is plainly inconsistent with the regulation or the regulation is inconsistent with the statute (here the Home Rule Charter). *Clark v. Department of Public Welfare,* 118 Pa.Commonwealth Ct. 587, 546 A.2d 1277 (1988). We hold that the City's interpretation is plainly inconsistent with the regulation. Regulation 2.40 does not speak of City employees who are not on a current eligibility list as being those in the

category who may be provisionally appointed. It allows only individuals who have "not been qualified for City employment through the established examination and certification procedure," that is, not qualified through the regular civil service procedures as those who may be provisionally appointed.

We have previously applied the rules of statutory construction to regulations as well as statutes. *See Northampton, Bucks County, Municipal Authority v. Department of Environmental Resources*, 114 Pa.Commonwealth Ct. 339, 547 A.2d 802 (1988), *aff'd*, 521 Pa. 253, 555 A.2d 878 (1989). Under the rules of statutory construction when the words of the regulation are clear and free from ambiguity, the letter of it may not be disregarded under the pretext of pursuing its spirit. 1 Pa.C.S. § 1921(b). That is exactly what the City seeks to do here and we are unimpressed with its claim that it has always interpreted the regulation in this manner and that FOP has never complained before. An invalid yet unchallenged interpretation of a regulation does not gain validity over time. Further, the fact that FOP (and its past officers or members) had not chosen to challenge the City's interpretation does not mean FOP has somehow waived its right to do so in the future. And, in any event, FOP's non-action is not a license to the City to violate the law.

Finally, we must answer the City's claim that FOP members are not aggrieved by the fourteen promotions. We disagree. In the competitive examinations now scheduled to produce an eligibility list, we fail to see how those who had actually served (albeit invalidly but through no fault of theirs) temporarily or provisionally in the positions they now seek to obtain permanently would not have the advantage of being able to tell the examiners they had actually been doing the job in question. We disagree with the Chancellor's conclusion that such harm to candidates not chosen for temporary or provisional promotions is speculative. Accordingly, we shall direct that during the examination process, before selections are made, the City must

furnish to each of the examiners in writing a statement that any individual who occupied the position temporarily via an unlawful appointment cannot be presumed more qualified (or less qualified) merely because he temporarily or provisionally held the position he now seeks permanently.[5] *See* 42 Pa.C.S. § 706.

Reversed.[6]

## ORDER

NOW, April 19, 1991, the order of the Court of Common Pleas of Philadelphia County in the above-captioned matter is hereby reversed. The fourteen appointments are declared null and void. Further, with respect to any of the fourteen candidates who seek to obtain a position on the relevant eligibility list, the City must furnish, in writing, to each of the examiners a statement that the appointment was invalid and that the individual cannot be presumed more qualified (or less qualified) merely because of the temporary or provisional appointment.

---

5. Providing each examiner with a copy of this opinion and order would suffice for this purpose.

6. Because of our disposition of this case, we need not consider FOP's other arguments.