**PENNSYLVANIA STATE POLICE, BUREAU OF LIQUOR CONTROL ENFORCEMENT, Appellant**

v.

**BENNY ENTERPRISES, INC., t/a Chookie's Lounge.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 14, 1995.

Decided Dec. 6, 1995.

Reargument Denied Feb. 6, 1996.

Stanley J. Wolowski and Thomas M. Ballaron, Assistant Counsels, for appellant.

Wayne V. DeLuca, for appellee.

Before McGINLEY and KELLEY, JJ., and LORD, Senior Judge.

KELLEY, Judge.

The Pennsylvania State Police, Bureau of Liquor Control Enforcement (bureau) appeals from an order of the Court of Common Pleas of Butler County (trial court) which reversed a decision of the Pennsylvania Liquor Control Board (board). The board reversed an order of an Administrative Law Judge (ALJ) dismissing a citation issued to Benny Enterprises, Inc., t/a Chookie's Lounge (licensee). We affirm in part and vacate in part.

This case arises out of a citation which was issued by the bureau to licensee on September 8, 1993.[1] The citation stated that on June 9, June 23 and August 6, 1993, licensee engaged in another business, without board approval, in violation of section 5.22(b) of the Pennsylvania Liquor Control Board Regulations (regulations), 40 Pa.Code § 5.22(b).[2]

On January 10, 1994, the bureau filed with the board a motion to withdraw or amend citation. The bureau asserted that the citation incorrectly charged licensee with violating section 5.22(b) of the regulations. The bureau noted that licensee is a corporation and that its license is not in an individual's name. As such, the bureau stated that the conduct on licensee's premises which it was challenging in its citation (the sale of darts

---

1. The bureau issued the citation to licensee pursuant to section 471 of the Liquor Code, Act of April 12, 1951, P.L. 90, *as amended*, 47 P.S. § 4–471. Section 471 of the Liquor Code sets forth the procedures pursuant to which the bureau may issue a citation to a licensee for any violation of the Liquor Code or any laws of the Commonwealth or any regulations of the board relating to liquor, alcohol or malt or brewed beverages.

2. Section 5.22(b) of the Regulations provides as follows:

   (b) An individual holding a retail license in his own name is not permitted to be employed at, or engaged in another business, except the associated business as permitted under § 3.52 (relating to connection with other business). If the license is issued in the name of a partnership, it is permissible for the partners, except one, to have outside employment.

and dart accessories on licensee's premises) was a violation of section 3.52(b) of the regulations, rather than a violation of section 5.22(b). Section 3.52(b) of the regulations provides that "[l]icensed premises may not have an inside passage or communication to or with any business conducted by the licensee or other persons except as approved by the Board." 40 Pa.Code § 3.52(b).

An administrative hearing on the citation was held before an ALJ on February 9, 1994. At that hearing, the ALJ granted the bureau's motion to withdraw or amend citation. The ALJ then made the following relevant findings of fact.

Licensee holds a restaurant liquor license and maintained an amusement permit, issued thereunder, for the license year ending April 30, 1994. Pursuant to its license and permit, licensee had three electronic dart boards on its premises and sponsored a dart league which met on a weekly basis. As a convenience to its dart league patrons, licensee maintained a stock of dart accessories which it purchased from P and L Vending Company. Between March 1993 and August 1993, licensee purchased $695.25 worth of dart supplies, including flights, tips and shafts, which licensee then offered for sale to its patrons at 10% above cost. Licensee made a profit of approximately $60.00 on these dart accessories, which represented less than one-tenth of one percent of licensee's total revenues.

The dart accessories were located in a glass display case along one wall in the barroom area of licensee's premises adjacent to the men's restroom. All receipts from the sales of these dart accessories were recorded in licensee's accounts receivable under the heading of miscellaneous sales. Licensee also recorded sales receipts from its cigarette machines under the same heading.

On June 9 and June 23, 1993, an officer from the bureau purchased dart accessories from one of licensee's bartenders. After she had rung up the sale, the bartender placed the money she had received from the officer in a gray tool box which was located to the left of the cash register. On these two dates, the officer was not participating in any dart league on licensee's premises. On August 6, 1993, the officer returned to licensee's establishment where he merely observed the display case containing the dart accessories.

Based upon all of the evidence presented, the ALJ concluded that the bureau had failed to establish that licensee had maintained an inside passage or communication to or with another business conducted by licensee in violation of section 3.52(b) of the regulations. The ALJ determined that the word "communication" as used in section 3.52(b) of the regulations referred to some sort of physical passageway from one distinct entity or space to another. As such, the ALJ could not conclude that the bureau had shown that there was such a communication between the display case and the rest of the licensed premises. The ALJ further stated that he could not find a law or a regulation which licensee had violated. Accordingly, the ALJ ordered that the citation issued to licensee be dismissed.

The bureau appealed the ALJ's determination to the board which reversed the ALJ's decision. The board concluded that there was not substantial evidence to support the ALJ's decision to dismiss licensee's citation because licensee clearly did not have board approval to operate a business for the sale of dart accessories on its premises. Accordingly, the board remanded this case to the ALJ for imposition of an appropriate penalty on licensee.

Licensee then appealed the board's determination to the trial court which reversed the decision of the board. The trial court stated that the board's finding that licensee had violated section 3.52(b) of the regulations was clearly erroneous. It further stated that it was clear that licensee was not engaging in the "business" of dart sales. The trial court agreed with the ALJ that there simply was not a passage or communication between the display case for the dart accessories and the rest of licensee's premises as required pursuant to section 3.52(b) of the regulations. Accordingly, the trial court dismissed the citation issued to licensee and imposed costs and reasonable fees on the bureau. The bureau now appeals the trial court's determination to

this court.[3]

In this appeal, the bureau raises the following issues: (1) whether the board's interpretation of section 3.52(b) of the regulations is reasonable and not clearly erroneous; and (2) whether the trial court erred in imposing costs and fees on the bureau in the absence of any case law or statutory authority.

The bureau first argues that the trial court erred when it concluded that the board's interpretation of section 3.52(b) of the regulations was erroneous and when it dismissed the citation issued to licensee. We disagree.

■■■ In construing administrative regulations, the agency interpretation is controlling unless: (1) the interpretation is clearly erroneous or inconsistent with the regulation; or (2) the regulation, itself, is inconsistent with the underlying legislative scheme. *Diehl v. Department of Public Welfare,* 88 Pa.Cmwlth. 404, 489 A.2d 988 (1985). Our Supreme Court has stated that, in ascertaining the legislative intent of a statutory provision, the practical results of a particular interpretation may be considered. *Lehigh Valley Cooperative Farmers v. Bureau of Employment Security, Department of Labor and Industry,* 498 Pa. 521, 447 A.2d 948 (1982). We note that this court has stated that the rules of statutory construction apply to regulations as well as to statutes. *Fraternal Order of Police Lodge No. 5 v. City of Philadelphia,* 139 Pa.Cmwlth. 256, 590 A.2d 384 (1991).

In this case, the trial court concluded that the board's interpretation of section 3.52(b) of the regulations was clearly erroneous. As previously stated, section 3.52(b) of the regulations provides that "[l]icensed premises may not have an inside passage or communication to or with any business conducted by the licensee or other persons except as approved by the Board." 40 Pa.Code § 3.52(b). We note that licensee does not dispute that its sale of dart accessories on its premises constituted business activity, albeit *de minimis.* At issue in this case is whether licensee's premises had an inside passage or communication with the area where licensee sold dart accessories which would result in a violation of section 3.52(b) of the regulations.

Given the fact that the display case for the dart accessories was located in the barroom area of licensee's premises, there clearly was no inside passage between licensee's premises and the area where the dart accessories were sold. Thus, we must consider what constitutes "communication" between a licensed premises and any business conducted by a licensee.

■■■ The word "communication" is not defined in the Liquor Code or in the regulations. However, when section 3.52(b) of the regulations is read in conjunction with other provisions of Subchapter F of Chapter 3 of the regulations, which relate to licensed premises, the appropriate interpretation of section 3.52(b) becomes clear. We note that section 3.52(a) of the regulations provides that "[a] licensee may not permit other persons to operate another business on the licensed premises." 40 Pa.Code § 3.52(a). The language of section 3.52(a) implies that, while *other persons* may not operate another business *on the licensed premises,* the licensee is free to do so.

The language of section 3.51 of the regulations, 40 Pa.Code § 3.51, is also instructive.

**3.** We note that on February 13, 1995, the bureau filed with this court an application for leave to appeal *nunc pro tunc.* In its application, the bureau asserted that the trial court did not send its opinion and order to the bureau's counsel in a timely manner which resulted in the filing of an untimely appeal by the bureau with this court. By order dated March 10, 1995, this court granted the bureau's application for leave to appeal *nunc pro tunc.*

In considering the bureau's appeal, we note that the trial court was required to conduct a *de novo* review and to make its own findings and conclusions. Based upon that *de novo* review, the trial court could sustain, alter, change, modi-

fy or amend the board's action whether or not it made findings which were materially different from those found by the board. *Pennsylvania State Police, Bureau of Liquor Control Enforcement v. Cantina Gloria's Lounge,* 536 Pa. 254, 639 A.2d 14 (1994). Therefore, we base our review on the facts as found by the trial court. Accordingly, our scope of review is limited to determining whether the trial court abused its discretion or committed an error of law. *Pennsylvania State Police, Bureau of Liquor Control Enforcement v. Capek,* 657 A.2d 1352 (Pa. Cmwlth.1995); *Pennsylvania State Police, Bureau of Liquor Control Enforcement v. R–Lounge, Ltd.,* 166 Pa.Cmwlth. 227, 646 A.2d 609 (1994).

Section 3.51 states that "[l]icensed premises may not have an *inside passage* or *communication* to or with a residence other than the residence of the licensee or manager." 40 Pa.Code § 3.51. (Emphasis added.) This language clearly implies that the "communication" between a licensed premises and a residence is some type of connective channel that separates one from the other.

The trial court in the present case concluded that there was no inside passage or communication between licensee's premises and any business conducted by licensee. The trial court further concluded that the word "communication" should be defined as "any connective passage or channel." Based upon our review of the regulations dealing with licensed premises, we cannot conclude that the trial court erred in making such a determination. In this particular case, the display case containing the dart accessories was physically located in the barroom area of the licensed premises. The language of section 3.52 of the regulations simply does not prohibit licensee from conducting another business activity on his licensed premises.

If we were to adopt the board's interpretation of section 3.52(b) of the regulations, we would have to conclude that every bar and restaurant which sells cigarettes or candy, or which has a jukebox or pinball machine on its licensed premises, must obtain approval from the board for such income-generating activities. Clearly, this would be an absurd result and one not intended by the language of section 3.52(b). As the trial court pointed out, if the board wants the power to approve of a business conducted by a licensee on its licensed premises, it should amend the regulations to include language which unequivocally provides for such board approval.

The bureau next argues that the trial court erred in imposing counsel fees and costs on the bureau. We disagree with respect to counsel fees and agree with respect to costs.

■ The customarily applied "American rule" provides that there can be no recovery of counsel fees from an adverse party in the absence of an express statutory allowance of attorney's fees, a clear contractual agreement between the parties, or some other established exception permitting attorney's fees in a given situation. *Department of Transportation, Bureau of Driver Licensing v. Hruska,* 156 Pa.Cmwlth. 139, 625 A.2d 1339 (1993). Licensee asserts that the trial court possessed the authority to impose counsel fees on the bureau by virtue of section 2503 of the Judicial Code, 42 Pa.C.S. § 2503.

Section 2503 of the Judicial Code sets forth ten specific instances when a common pleas court may award counsel fees. Subsection (9) of section 2503 states as follows:

The following participants shall be entitled to a reasonable counsel fee as part of the taxable costs of the matter:

. . . .

(9) Any participant who is awarded counsel fees because the conduct of another party in commencing the matter or otherwise was arbitrary, vexatious or in bad faith.

■ For purposes of this statutory provision, a "vexatious" suit is one instituted without sufficient grounds which only serves to cause annoyance. *Springfield Township v. Gonzales,* 158 Pa.Cmwlth. 664, 632 A.2d 1353 (1993), *petition for allowance of appeal denied,* 538 Pa. 618, 645 A.2d 1321 (1994). An "arbitrary" suit is one based on random or convenient selection or choice, rather than one based on reason or nature. *Id.* "Bad faith," as that term is used in subsection (9) of section 2503, is fraud, dishonesty or corruption. *Id.*

■ In awarding counsel fees in this case, the trial court stated that the bureau's taking of such lengthy steps to appeal this case, thereby adding to the backlog in the judicial system at the expense of the county, state and licensee, was reprehensible conduct. This court agrees with the concerns raised by the trial court with respect to the time and expense of this proceeding which was initiated by the bureau. The bureau spent thousands of dollars litigating an alleged violation of the regulations by licensee which resulted from licensee selling approximately $60.00 worth of dart accessories on its premises. Clearly, the bureau's conduct in

this matter was vexatious and was an over-zealous pursuit of *de minimis* activity. Accordingly, the trial court did not abuse its discretion by imposing counsel fees on the bureau.

With respect to the imposition of costs on the bureau, we note that, because our Supreme Court has not promulgated rules governing the imposition of costs in the common pleas courts, the courts of common pleas retain the right to adopt local rules governing the imposition of costs in statutory appeals. *Hruska.* This court has further stated that where no local rule has been promulgated, an award of costs is unauthorized. *Id.*

In the present case, the trial court did not rely upon any local rule in awarding costs against the bureau. Accordingly, we must vacate the award of costs.

### ORDER

NOW, this 6th day of December, 1995, the order of the Court of Common Pleas of Butler County, dated December 20, 1994, at No. 48 of 1994, is affirmed in part and vacated in part in accordance with the foregoing opinion.

