**South New Castle Borough v. Fiello**

354

C.P. of Lawrence County, no. 160-7 of 1992, M.L.D.

*Gene G. Dimeo,* for plaintiff.
*Joseph J. Kearney,* for defendant.

PRATT, *J.,* January 29, 1997—The defendant, Frank T. Fiello, has filed a petition for attorney's fees against the plaintiff, Borough of South New Castle, seeking payment of reasonable attorney's fees from the borough, which defendant alleges he expended in resolving the legal issues with the borough.

The defendant alleges that the borough's conduct in commencing and continuing its legal action against the defendant regarding the sewer line assessment was in bad faith, dilatory, obdurate, and vexatious and that under sections 2503(7) and 2503(9) of the Judicial Code, 42 Pa.C.S. §§2503(7) and 2503(9), the defendant is entitled to reasonable counsel fees from the borough. Plaintiff justifies the delay, claiming that, throughout the time period involved, the borough was attempting to locate an alleged written agreement between the parties which would show that the defendant was liable to the borough for the assessment.

The court heard oral argument of counsel without the benefit of legal briefs, as neither party filed briefs relative to the instant petition and the issue of counsel fees. The court did review part of the record established, including the defendant's petition and the borough's answer thereto, depositions, defendant's affidavit of December 6, 1996, and answers to interrogatories filed December 3, 1996.

## FINDINGS OF FACT

The events which underlie the instant petition began in April 1979, when the defendant entered into an agreement with the borough to extend a planned sewer project

for another 50 feet in order to connect sewer service to a mobile home park located on defendant's property. After some negotiations, the defendant and the borough, through its council, agreed that the defendant would pay the cost of extending the sewer line and 11 tap-in fees. Although the parties contemplated doing so, no written contract was ever drafted or signed memorializing the agreement. The sewer line was completed in June of the same year and, in December, the defendant reimbursed the borough the agreed upon amount of $4,915 for the cost of the sewer line extension and tap-in fees.

At a later date, sometime in 1989, the sewer line extension originally paid for by the defendant was extended further by the borough across the front of the defendant's property to connect with the sewer system of adjacent Shenango Township. In August 1991, the borough notified the defendant that he was being charged a front foot assessment in the amount of $2,363.27 for the new sewer line extension into Shenango Township. Defendant took the position that, since he had personally paid to extend the existing line in 1979 and was not benefited by the borough's 1989 extension, he was not responsible for the front foot assessment and, consequently, he refused to pay it. In addition, he sought reimbursement from the borough for a tap-in fee the borough collected from a third party for a subsequent connection to the portion of the line defendant had financed.

In August 1992, the borough placed a lien on the defendant's property in the amount of the assessment plus interest. Between August 1992 and May 1995, the defendant addressed the borough council on various occasions requesting that the lien be removed. These efforts were not successful. Concerned that a judgment

would ensue, the defendant made partial payments on the front foot assessment totaling $544.58. After consulting with several attorneys about the matter, the defendant retained his current counsel in January 1995, who sent a letter to the borough's solicitor on February 24, 1995, confirming the defendant's position that he owed no assessment and asking that the lien be satisfied by the borough.

The borough solicitor, in a memo dated March 31, 1995, from an associate of the solicitor, was advised that the defendant was not liable for the assessment and that his payments should be reimbursed and the lien satisfied. When the defendant did not receive a response from his February 1995 letter, he inquired at a borough council meeting on April 11, 1995 as to whether the solicitor had received his letter. The solicitor indicated that he had received the letter and would advise defendant's counsel. The solicitor did not bring the letter or the memo with him, nor did he discuss it with the council that day. At the same borough council meeting, the borough's mayor contended that the defendant had made an agreement with the borough to extend the line to the edge of his property at the time the 1979 sewer line was originally installed and, therefore, the defendant should not be excused from the assessment for the 1989 sewer extension.

At the next council meeting, on May 9, 1995, defendant again inquired about satisfaction of his lien but was informed that the solicitor would contact his attorney. The defendant also requested a copy of the alleged agreement described by the mayor, but the council declined to provide it.

After the May 9, 1995 borough council meeting, the solicitor failed to contact defendant's counsel. Con-

sequently, on May 23, 1995, defendant filed and had served upon the borough a notice to issue writ of scire facias. On May 26, 1995, the borough served the writ of scire facias on the defendant. The defendant responded with an affidavit of defense on June 9, 1995 and, subsequently, served a request for admissions and accompanying interrogatory to plaintiff on the borough on July 26, 1995.

The borough never responded to the request for admissions, which included an admission that the defendant never agreed to pay a front foot assessment for any extension to the sewer line beyond that portion he had paid for in 1979. Faced with a continuing lack of response by the borough, the defendant filed a motion for summary judgment on September 29, 1995. Defendant's counsel received his first written response from the borough's solicitor on October 4, 1995, in which he indicated that action on the matter was expected to be taken at the next council meeting. At about the same time, the borough's solicitor wrote a letter to the borough council, advising them to refund the money to the defendant and satisfy the lien. However, at the next borough council meeting, which the defendant attended, the subject of the lien was not raised or discussed.

It was not until several months later, on February 26, 1996, after a continuous and fruitless search by the borough for a mythical agreement recalled and described by the mayor, that the borough privately satisfied the lien and refunded the money paid by the defendant on the assessment. On March 26, 1996, the borough reimbursed the defendant, with interest, for the tap-in fee they had collected from a neighbor's connection to the sewer line.

## DISCUSSION

The customarily applied "American rule" provides for the recovery of counsel fees from an adverse party only when authorized by an express statutory provision, a clear contractual agreement exists between the parties, or by some other established exception permitting attorney's fees in a given situation. *PennDOT v. Hruska,* 156 Pa. Commw. 139, 625 A.2d 1339 (1993). In seeking counsel fees, the defendant relies on section 2503 of the Judicial Code, which states, in pertinent part:

"The following participants shall be entitled to a reasonable counsel fee as part of the taxable costs of the matter: . . .

"(7) Any participant who is awarded counsel fees as a sanction against another participant for dilatory, obdurate or vexatious conduct during the pendency of a matter. . . .

"(9) Any participant who is awarded counsel fees because the conduct of another party in commencing the matter or otherwise was arbitrary, vexatious or in bad faith. . . ." 42 Pa.C.S. §2503(7) and §2503(9).

We shall dispense with section 2503(9) first, as we find the facts in this case do not support its application here. As it relates to 42 Pa.C.S. §2503(9), an "arbitrary" lawsuit is one based on random and convenient selection or choice. *Pennsylvania State Police, Bureau of Liquor Control Enforcement v. Benny Enterprises Inc,* 669 A.2d 1018 (Pa. Commw. 1995), *reargument denied; Springfield Township, Bucks County Board of Supervisors v. Gonzales,* 158 Pa. Commw. 664, 632 A.2d 1353 (1993), *appeal denied,* 538 Pa. 618, 645 A.2d 1321 (1994). A "vexatious" lawsuit is one instituted without sufficient grounds which only serves to cause annoyance. *Id.* In

addition, "bad faith" is defined as fraud, dishonesty, or corruption. *Id.*

Here, the borough was not arbitrary in instituting its action, since the impetus was provided by the defendant when he requested a writ of scire facias be issued. The borough has consistently maintained that the mayor legitimately believed that an agreement existed which would have obligated the defendant to pay the assessment. Had such an agreement existed, it clearly would have provided sufficient grounds for the suit. A claim that is merely weak and subsequently found to be devoid of merit will not necessarily be equated with conduct that is arbitrary, vexatious, or in bad faith, so as to permit an award of counsel fees. *In re Estate of Liscio,* 432 Pa. Super. 440, 638 A.2d 1019 (1994), *appeal denied,* 539 Pa. 679, 652 A.2d 1324 (1994). Therefore, it cannot be concluded that the legal action by the borough was commenced and maintained on an arbitrary, vexatious, or bad faith basis.

Nevertheless, during the course of this entire matter, the borough stubbornly persisted in their insistence that an agreement existed long after a diligent search should have confirmed this. The alleged agreement first became public knowledge in April 1995, six weeks before an action commenced. The solicitor was aware that the defendant's position was legally sound even before this, making the existence of a previous agreement the only possible ground upon which the borough could succeed.

Such a situation should have made finding the alleged agreement and proving the allegation a priority with the utmost importance. Incredibly, the borough did not finally concede this issue until February 26, 1996, over one year after the borough council was first contacted

by the defendant's counsel about his claim and approximately *five months* after they were advised by their own solicitor to satisfy the lien and drop the action.

Although the borough claims to have made a diligent search, the evidence is to the contrary. The defendant testified that, once he received the appropriate council meeting minutes, it took him about one-half hour to review them and conclude that no agreement ever existed. Deposition of Frank Fiello at p. 57, ll. 4-6. The borough did not contact Attorney Gerald Crowley, its solicitor in 1979, to seek his recollection and records until after January 18, 1996. Deposition of John Kline at pp. 72-73, ll. 21-25, 1-5.

Moreover, the borough admits in its answer to defendant's interrogatories filed December 3, 1996 that the borough did not examine its safe deposit box at Mellon Bank to search for the alleged written agreement until the period December 1995 through February 1996.

As previously stated, 42 Pa.C.S. §2503(7) authorizes the award of counsel fees for "dilatory, obdurate, or vexatious conduct" of a party during the pendency of a matter. Black's Law Dictionary defines dilatory as "tending or intended to cause delay . . . or to put off a decision," while Webster's Dictionary defines obdurate as "hardened in feelings," "stubbornly persistent," and "resistant to persuasion." As noted earlier, vexatious conduct is that which only serves to cause annoyance. *Pennsylvania State Police, supra; Springfield Township, supra.*

In *Gertz v. Temple University*, 443 Pa. Super. 177, 661 A.2d 13 (1995), the Superior Court upheld the trial court's award of counsel fees as a sanction for

counsel's dilatory conduct. The issue arose when Temple, after the jury trial of the case but without first filing the necessary post-trial motions with the trial court, appealed directly to the Superior Court which subsequently quashed the appeal as untimely. Temple then requested and received an order from the trial court permitting it to file the proper post-trial motions nunc pro tunc, one month after the filing deadline had passed. Afterward, the trial court denied the post-trial motions and, at the same time, granted counsel fees to Gertz as a sanction. *Id.* at 180, 661 A.2d at 14. Later, upon appeal of the trial court's decision, the Superior Court upheld the award, finding that the trial court was within its discretion, since Temple's counsel's lack of diligence unnecessarily delayed the proceedings and caused additional legal work. *Id.* at 185 n.2, 661 A.2d at 17 n.2.

A pervasive pattern of procrastination and delay permeates these entire proceedings. The defendant was forced to file and serve a notice to issue writ of scire facias after neither the borough nor its solicitor responded to his letter in February 1995. After the writ was issued, there was no further response from the borough. The request for admissions went unanswered. Aside from some verbal assurances that the borough did not plan to enforce the lien, the defendant's counsel received no response from the borough solicitor until October 1995, eight months after his original letter had been sent. It was not until the defendant filed a motion for summary judgment before he obtained even this response.

The borough solicitor advised borough council to drop their claim at this same point in time in October 1995, but the borough continued its mystifying search

for the nonexistent agreement for almost five more months. Clearly, this inexplicably delayed the resolution of the case. It necessitated the filing of motions and the taking of depositions by the defendant. The delay and the required legal work caused by the borough in the instant case far exceeds the degree found adequate to support an award of counsel fees in *Gertz, supra.* Consequently, the borough's actions during the pendency of this case clearly match the definitions of dilatory and obdurate conduct and, thus, merit the award of reasonable counsel fees.

Accordingly, the court shall issue an order implementing its conclusions.

## ORDER

Pursuant to the opinion attached hereto, the court grants the defendant's petition for attorney's fees. The court directs counsel for the defendant to file and serve, within 10 days of notice of this order, an affidavit setting forth the amount of time expended on behalf of defendant in resolving the legal action in question, specific description of services rendered in this matter, hourly rate for legal fees charged in this case, and total amount of legal fees which are claimed as reasonable counsel fees under 42 Pa.C.S. §2503(7).

Within 20 days of notice of defendant's counsel's affidavit of reasonable counsel fees, the plaintiff shall either pay counsel for the defendant the total amount of legal fees claimed as reasonable counsel fees in defendant's counsel's affidavit, or file a motion requesting a hearing of the affidavit restricted to the issue of the reasonableness of the amount of counsel fees claimed as reasonable counsel fees.