**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| PENNSYLVANIA STATE POLICE, BUREAU OF LIQUOR CONTROL ENFORCEMENT, | : | No. 61 MAP 2017 |
| | : | |
| | : | Appeal from the Order of the |
| | : | Commonwealth Court dated April 13, |
| Appellant | : | 2017 at No. 575 CD 2016 Affirming |
| | : | the Order of the Berks County Court of |
| | : | Common Pleas, Civil Division, dated |
| v. | : | March 15, 2016, docketed March 16, |
| | : | 2016, at No. 15-17486. |
| | : | |
| JET-SET RESTAURANT, LLC, | : | ARGUED: May 17, 2018 |
| | : | |
| Appellee | : | |

**OPINION**

**JUSTICE DOUGHERTY**                                    **DECIDED: August 21, 2018**

We granted discretionary review to determine whether the definition of "frequent" set forth in *Appeal of Speranza*, 206 A.2d 292 (Pa. 1965) continues to apply to Section 4-493(14) of the Liquor Code, 47 P.S. §4-493(14), in light of subsequent amendments to the statute. We conclude *Speranza* still controls and, accordingly, affirm the order of the Commonwealth Court.

On November 1, 2014, officers from the Pennsylvania State Police, Bureau of Liquor Control Enforcement (Bureau) conducted an investigation regarding underage persons present inside appellee Jet-Set Restaurant, LLC (Jet-Set), a licensed establishment located in Reading, Berks County. Adjudication of Administrative Law Judge (ALJ), 5/13/15 at 1. Bureau officers identified four underage females inside Jet-Set. *Id.* at 2. The officers observed three of the four females enter Jet-Set after providing

a doorman with identification that showed they were underage. *Id.* Bureau officers also observed one of the females purchase a bottle of beer inside Jet-Set and another one of the females consume two bottles of beer purchased by another customer. *Id.* Bureau officers subsequently learned one of the females had been inside Jet-Set on a previous occasion in 2014. *Id.*

As a result of the investigation, the Bureau cited Jet-Set for: (1) permitting minors to frequent the premises in violation of Section 4-493(14) of the Liquor Code (frequenting count); and (2) furnishing alcohol to underage minors in violation of Section 4-493(1) of the Liquor Code, 47 P.S. §4-493(1) (furnishing count).[1] *Id.* at 1. An ALJ dismissed the frequenting count and sustained the furnishing count, which is not at issue in this appeal. *Id.* at 4. The Bureau appealed the dismissal of the frequenting count, but both the Pennsylvania Liquor Control Board and the Berks County Court of Common Pleas affirmed the dismissal on the basis that "frequent" means "to visit often or to resort to habitually or to recur again and again, or more than one or two visits" and the Bureau had not established a violation based on the isolated occurrence observed by Bureau officers in November 2014. *See* Liquor Control Board Op., 8/19/15 at 5-7 (discussing *Speranza* and finding General Assembly's continued use of "frequent" evidenced intent to retain *Speranza* definition after 2003 amendments); *see also* Trial Court Op., 3/10/16 at 2-3 (same).

---

[1] Section 4-493(1) states, in relevant part, it shall be unlawful for a licensee "to sell, furnish or give any liquor or malt or brewed beverages, or to permit any liquor or malt or brewed beverages to be sold, furnished or given, to any person visibly intoxicated, or to any minor[.]" 47 P.S. §4-493(1). Section 4-493(14) specifies the limited circumstances when minors may "frequent" licensed premises, and is discussed in more detail below.

The Bureau then appealed to the Commonwealth Court and a divided three-judge panel affirmed the dismissal in an unpublished opinion.[2] The majority first acknowledged there were differences between the version of Section 4-493(14) at issue in *Speranza* and the version at issue in this case.[3] *Pennsylvania State Police, Bureau of Liquor*

---

[2] Judge Hearthway authored the memorandum opinion, which was joined by President Judge Leavitt. Judge McCullough authored a dissenting opinion.

[3] When *Speranza* was decided, Section 4-493(14) stated, "[i]t shall be unlawful … [f]or any hotel, restaurant or club liquor licensee, or any retail dispenser, his servants, agents or employes, to permit persons of ill repute, known criminals, prostitutes or minors to frequent his licensed premises or any premises operated in connection therewith, except minors accompanied by parents, guardians, or under proper supervision." Act of April 12, 1951, P.L. 90, *former* 47 P.S. §4-493(14). The version of Section 4-493(14) at issue here states the following:

> [i]t shall be unlawful … [f]or any hotel, restaurant or club liquor licensee, or any retail dispenser, his servants, agents or employes, to permit persons of ill repute or prostitutes to frequent his licensed premises or any premises operated in connection therewith.
>
> Minors may only frequent licensed premises if: (a) they are accompanied by a parent; (b) they are accompanied by a legal guardian; (c) they are under proper supervision; (d) they are attending a social gathering; or (e) the hotel, restaurant or retail dispenser licensee has gross sales of food and nonalcoholic beverages equal to fifty per centum or more of its combined gross sale of both food and alcoholic beverages. If a minor is frequenting a hotel, restaurant or retail dispenser licensee under subsection (e), then the minor may not sit at the bar section of the premises, nor may any alcoholic beverages be served at the table or booth at which the said minor is seated unless said minor is with a parent, legal guardian or under proper supervision. Further, if a hotel, restaurant, club liquor licensee or retail dispenser is hosting a social gathering under subsection (d), then written notice at least forty-eight hours in advance of such gathering shall be given to the Bureau of Enforcement. If a minor is frequenting licensed premises with proper supervision under subsection (c), each supervisor can supervise up to twenty minors, except for premises located in cities of the first class, where each supervisor can supervise up to five minors. Notwithstanding any other provisions of this section, if the minors are on the premises as part of a school-endorsed function, then each supervisor can supervise fifty minors. Nothing in this clause shall be construed to make it unlawful for minors to frequent public venues or performing arts facilities.

*Control Enforcement v. Jet-Set Restaurant, LLC*, No. 575 C.D. 2016, 2017 WL 1365605, at *2 (Pa. Cmwlth. filed Apr. 13, 2017). However, the majority ultimately held the lower tribunals committed no error in determining Jet-Set did not allow minors to "frequent" its premises in violation of Section 4-493(14) as this Court in *Speranza* "unambiguously defined 'frequenting' as a minor entering a licensed premises on more than one or two occasions" and "Jet-Set was cited for permitting a minor to be present in a licensed premises on two occasions in 2014." *Id*. at *3, *citing Speranza*, 206 A.2d at 294. The majority held the term "frequent" was unambiguous, the General Assembly's continued use of the word in its 2003 amendments raised a presumption that the General Assembly "intended to retain the same definition" following *Speranza,* and "the Bureau [ ] presented no evidence" to the contrary. *Id*., *citing* 1 Pa.C.S. §1922(4).[4]

In dissent, Judge McCullough agreed with the Bureau and would have held the 2003 amendment to Section 4-493(14) "evidenced a change in the General Assembly's intent" because "the former version 'prohibited a specific classification of patrons from frequenting a bar,' while in the current formulation, the General Assembly stated 'with great specificity the only circumstances when a minor may be in a bar, compelling the conclusion that the general rule is that minors are not permitted in bars.'" *Id*. at *4 (McCullough, J., dissenting), *quoting* Bureau's Commonwealth Court Brief at 16-17. According to Judge McCullough, the new language of Section 4-493(14) "plainly refers to

---

Act of May 8, 2003. P.L. 1, 47 P.S. §4-493(14).

[4] Alternatively, the majority held, even assuming the meaning of "frequent" was ambiguous, Jet-Set was entitled to a strict construction of Section 4-493(14) as it is a penal statute, which subjects violators to potential fines and incarceration under 47 P.S. §4-494(a). *Id*. at *3 (internal citations and quotations omitted). The Bureau requested review of this alternative holding, but we denied that request. *Pennsylvania State Police, Bureau of Liquor Control Enforcement v. Jet-Set Restaurant, LLC*, 171 A.3d 1282, 1283 (Pa. 2017) (*per curiam*).

the legality of the presence of minors in a bar in terms of a single occasion" and "strongly supports the conclusion that any time a minor is present on a bar's premises, except for one of the reasons listed in the five statutory exceptions, the bar has permitted the minor to unlawfully visit or 'frequent' the premises." *Id.* As such, Judge McCullough would have concluded Jet-Set permitted minors to "frequent" its premises in violation of Section 4-493(14), based on the conduct observed in November 2014.[5] *Id.*

The Bureau sought allowance of appeal and this Court accepted review of the following question: "Does the definition of 'frequenting' set forth in [*Speranza*] still apply to Section 4–493(14) of the Liquor Code, or do the 2003 Amendments to the Code demonstrate the General Assembly's intent that a minor may not be inside a licensed premises even a single time unless one of the exceptions enumerated in Section 4–493(14) applies?" *Pennsylvania State Police, Bureau of Liquor Control Enforcement v. Jet-Set Restaurant, LLC*, 171 A.3d 1282, 1283 (Pa. 2017) (*per curiam*). When presented, as we are in this appeal, with questions of law pertaining to statutory interpretation, our scope of review is plenary and non-deferential. *A.S. v. Pennsylvania State Police*, 143 A.3d 896, 903 (Pa. 2016).

The Bureau contends the meaning of "frequent" as applied to minors is ambiguous in light of the 2003 amendments to Section 4-493(14). Bureau's Brief at 13-14. According to the Bureau, the changes were "material" as the subsection is "markedly different than when it was construed by the Court in *Speranza*" and now approaches "the issue of the

---

[5] Judge McCullough, in stating the *Speranza* definition is not well formulated or clear, relied upon Pennsylvania cases where frequenting counts were sustained based on minors being present on a licensed premises on only one occasion. *Id.* at \*5 (McCullough, J., dissenting), *citing Bateman-Gallagher Post No. 668, Home Ass'n. v. Commonwealth of Pennsylvania, Liquor Control Board*, 540 A.2d 617 (Pa. Cmwlth. 1988); *Pennsylvania State Police, Bureau of Liquor Control Enforcement v. CIC Investors No. 850 Ltd.*, 13 Pa. D. & C. 4th 518 (C.P. Montgomery filed Feb. 13, 1992). We discuss these cases in more detail below.

presence of minors on a licensed premises in an entirely new manner." *Id.* at 16. The Bureau argues removing minors from "the general prohibition on 'frequenting'" which now "addresses only 'persons of ill repute' and 'prostitutes'" evidences the General Assembly's intention to prohibit minors from visiting licensed establishments when none of the enumerated exceptions apply.[6] *Id.* at 16-17. In this respect, the Bureau contends, "[e]ach of the exceptions set forth in the 2003 amendment plainly and clearly refers to the legality of the presence of minors in a bar in terms of a single occurrence" and those exceptions act as "safeguards that will isolate and protect minors from the ill effects associated with alcohol." *Id.* at 18-19. Additionally, the Bureau argues such a reading will favor the public's interest in restricting minors from accessing alcohol, which it argues is the intent of the General Assembly, and prevent an unreasonable interpretation. *Id.* at 19-21.

Jet-Set responds by arguing "[t]he [Bureau's] purported 'material changes' are primarily structural in nature and have no impact on the spirit or character of the Code" and, as such, "there is no justification to revisit this Court's definition of 'frequent.'" Jet-Set's Brief at 3. To illustrate its argument, Jet-Set refers to the 2002 version of Section 4-493(14), which "[i]n one sprawling fourteen-line sentence [ ] set forth the prohibitions, exceptions, and subparts to each exception relating to minors"[7] and argues the 2003

---

[6] The Bureau notes the *Speranza* definition of "frequent" arguably could continue to apply to persons of ill repute and prostitutes since the same general prohibition of those types of patrons remains from the statute at issue in *Speranza*. *Id.*

[7] The 2002 version of Section 4-493(14) stated as follows:

[i]t shall be unlawful … [f]or any hotel, restaurant or club liquor licensee, or any retail dispenser, his servants, agents or employes, to permit persons of ill repute, known criminals, prostitutes or minors to frequent his licensed premises or any premises operated in connection therewith, except minors accompanied by parents, guardians, or under proper supervision or except minors who frequent any restaurant or retail dispensing licensee whose sales of food and non-alcoholic beverages are equal to seventy per centum or more of the combined gross sales of both food and alcoholic beverages

amendment "was little more than sorely needed editing." *Id.* at 5. Accordingly, Jet-Set

argues the 2003 amendment did "little more than restate the historic spirit of Section 4-

493(14) — persons of ill repute and prostitutes are not permitted to frequent a licensed

premises" and "minors are specifically permitted to 'frequent' a licensed premises so long

as certain conditions exist." *Id.* at 7. Contrary to the Bureau's argument, Jet-Set contends

---

on the condition that alcoholic beverages may not be served at the table or booth at which the said minor is seated at the time (unless said minor is under proper supervision as hereinafter defined) and on the further condition that only table service of alcoholic beverages or take-out service of beer shall be permitted in the room wherein the minor is located: Provided, however, That it shall not be unlawful for any hotel, restaurant or club liquor licensee or any retail dispenser to permit minors under proper supervision upon the licensed premises or any premises operated in connection therewith for the purpose of a social gathering, even if such gathering is exclusively for minors: And provided further, That no liquor shall be sold, furnished or given to such minors nor shall the licensee knowingly permit any liquor or malt or brewed beverages to be sold, furnished or given to or be consumed by any minor, and the area of such gathering shall be segregated from the remainder of the licensed premises. In the event the area of such gathering cannot be segregated from the remainder of the licensed premises, all alcoholic beverages must be either removed from the licensed premises or placed under lock and key during the time the gathering is taking place. Notice of such gathering shall be given the board as it may, by regulation, require. Any licensee violating the provisions of this clause shall be subject to the provisions of section 471. Nothing in this clause shall be construed to make it unlawful for minors to frequent public venues or performing arts facilities.

"Proper supervision," as used in this clause, means the presence, on that portion of the licensed premises where a minor or minors are present, of one person twenty-five years of age or older for every fifty minors or part thereof who is directly responsible for the care and conduct of such minor or minors while on the licensed premises and in such proximity that the minor or minors are constantly within his sight or hearing. The presence of the licensee or any employe or security officer of the licensee shall not constitute proper supervision.

Act of December 20, 2000, P.L. 992, *former* 47 P.S. §4-493(14).

Section 4-493(14) "does not 'proactively' state when minors may 'legally be in a bar'" but rather "controls when minors may 'frequent' a licensed premises." *Id.* To this end, Jet-Set argues this Court has already defined "frequent" as meaning "'to visit often or to resort to habitually or to recur again and again, on more than one or two visits[,]'" *id.* at 7-8, *quoting Speranza*, 206 A.2d at 294, and "[t]he [Bureau] has failed to present evidence that the General Assembly intended to use any definition for 'frequent' other than that which existed from 1965 to 2003." *Id.* at 9. Jet-Set additionally contends the General Assembly's "choice to use the same term demonstrates acceptance of the existing definition" explained in *Speranza*. *Id.*

Jet-Set further argues Judge McCullough relied on distinguishable precedent in her dissent, and also failed to recognize "[t]he 2003 [a]mendments provide no greater protection for minors — and hence greater restrictions on licensees — than existed at the time of *Speranza*." *Id.* at 9-10. In fact, Jet-Set argues, "the number of exceptions has been expanded since *Speranza*, in favor of the licensee, to allow licensees more flexibility in catering to their customers' needs." *Id.* at 10. Jet-Set further contends "the 2003 [a]mendment exceptions 'relate to a single occurrence or event' no more than they did, or did not, in *Speranza*" since the General Assembly did not change the exceptions, but simply added the word "only" before its use of "frequent." *Id.* As to the addition of the word "only," Jet-Set notes "'only' is the adverb which modifies 'frequent' expressing a relation of place, time, circumstance, manner, cause, [or] degree" but it "cannot alter its definition." *Id.* Jet-Set ultimately contends "the General Assembly was stating that minors may 'solely or exclusively' 'visit often or habitually' a licensed premises if certain conditions existed." *Id.*

It is clear *Speranza*, decided in 1965, is compelling precedent here, notwithstanding subsequent statutory amendments; indeed, we conclude the decision

controls this appeal. In *Speranza*, the Bureau cited the liquor licensee for permitting minors to "frequent" its premises based on an inspection that revealed ten minors eating pizza and drinking soda. 206 A.2d at 294. Four of the ten minors testified before the Liquor Control Board: two had been on the premises with their parents once or twice before, and two had never been on the premises. *Id.* On appeal from an order upholding suspension of the licensee's liquor license, this Court reversed on the basis there was no evidence establishing that minors "frequent[ed]" the premises. *Id.* The Court explained, "[t]o 'frequent,' in the context of the relevant statutory provision, means to visit often or to resort to habitually or to recur again and again, or more than one or two visits." *Id.* (citations omitted). Importantly, the Court further held it did "not mean to say that it must be found that the **same** minor or minors come to the premises habitually. But it must be established by a fair preponderance of specific evidence that, as a course of conduct, licensees permit minors to come on the premises." *Id.* (emphasis in original).

We now consider whether the post-*Speranza*, 2003 amendment to Section 4-493(14) somehow demonstrates an intent on the part of the General Assembly to alter the meaning of "frequent" from the definition set forth in *Speranza*. Our analysis is guided by the Statutory Construction Act, which directs courts "to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S. §1921(a). The plain language of a statute generally provides the best indication of legislative intent. *A.S.*, 143 A.3d at 903. We note the term "frequent" is ordinarily used to denote repeated visits to a location. *See* American Heritage Dictionary 545 (3d. ed. 2000) (defining frequent as "[o]ccurring or appearing quite often or at close intervals" and defining frequenting as "[t]o pay frequent visits to; be in or at often").

Moreover, we may presume that, where this Court has previously interpreted certain statutory language, and that language is retained in subsequent amendments to

the same statute, the legislature approved of and intended to uphold that interpretation. *See* 1 Pa.C.S. §1922(4) (presuming "[t]hat when a court of last resort has construed the language used in a statute, the General Assembly in subsequent statutes on the same subject matter intends the same construction to be placed upon such language"); *see also Verizon Pennsylvania, Inc. v. Commonwealth*, 127 A.3d 745, 757 (Pa. 2015) ("[o]ne of the most venerable and fundamental tenets of statutory interpretation is that, whenever our Court has interpreted the language of a statute, and the General Assembly subsequently amends or reenacts that statute without changing that language, it must be presumed that the General Assembly intends that our Court's interpretation become part of the subsequent legislative enactment"); *Parisi v. Philadelphia Zoning Bd. of Adjustment*, 143 A.2d 360, 363 (Pa. 1958) ("long established rule … that when, in a later legislative enactment, the same language is used as in a prior cognate statute, which has been construed by us, the presumption is that the language thus repeated is to be interpreted in the same way it previously had been"); *In re Buhl's Estate*, 150 A. 86, 87 (Pa. 1930) (same).

After careful review, we agree with Jet-Set that the 2003 amendments to Section 4-493(14) do not evidence an intent on the part of the General Assembly to alter the meaning of "frequent" from the one established in *Speranza*, and in fact, the legislature's continued use of the term reflects an intent to approve of *Speranza*'s definition.  Moreover, our view in this regard has more than mere "facial appeal."  *See* Dissenting Opinion, slip op. at 5 (Baer, J.).  Unlike Justice Baer, we do not find a material or "substantial disparity between the text of the prior statute and that of the 2003 amendments[.]"  *Id.*  Section 4-493(14) has always included a general prohibition on permitting persons of ill repute, prostitutes, and minors to "frequent" licensed locations, and has always provided

exceptions to the general prohibition of minors.[8]  *See* Act of April 12, 1951, P.L. 90, *former* 47 P.S. §4-493(14).  When *Speranza* was decided the only exception to the prohibition was for "minors accompanied by parents, guardians, or under proper supervision."  *Id.*  In the years that followed, however, the General Assembly expanded that exception to allow minors to frequent licensed premises that met requirements regarding food sales, or to attend social gatherings, and to make clear minors could frequent **public** venues with no restrictions.  *See* Act of December 20, 2000, P.L. 992, *former* 47 P.S. §4-493(14).  Indeed, the text of Section 4-493(14) ballooned to the point where it encompassed numerous exceptions "[i]n one sprawling fourteen-line sentence[.]"  Jet-Set's Brief at 5.  These multiple exceptions remain in the current version of Section 4-493(14), and there were no substantive alterations in 2003 beyond much-needed organization into subparts (a) through (e).  This minor technical revision does not suggest the General Assembly intended to alter the definition of "frequent" as described in *Speranza*, and instead indicates an intent to maintain that exact interpretation.

Nor are we persuaded that inserting the *Speranza* definition of "frequenting" — visiting more than once or twice — into the numerous places where the term appears in the current statute would "make little sense."  Dissenting Opinion, slip op. at 5-6 (Baer,

---

[8] Although we recognize Justice Mundy's point regarding the practicability of enforcing Section 4-493(14) when using the *Speranza* definition of "frequent," we must note the use of that definition in the present statute is no more "impractical" than when *Speranza* was decided.  Dissenting Opinion, slip op. at 2 (Mundy, J.).  As stated above, in *Speranza*, this Court held that the General Assembly, by use of the word "frequent," specifically intended to encumber the Bureau with the burden of establishing that minors visited a licensed premises on "more than one or two" occasions, or that a licensee, "as a course of conduct," permitted minors to visit their premises when one of the exceptions did not apply.  206 A.2d at 294.  As such, contrary to Justice Mundy's opinion "it is unlikely that the General Assembly intended to condone allowing licensed premises to knowingly admit minors into their establishments unless one of the Section 4-493(14) exception was met[,]" the *Speranza* Court held the General Assembly did, in fact, intend to condone such action so long as it did not occur "more than one or two" times or as "a course of conduct." Dissenting Opinion, slip op. at 2 (Mundy, J.).

J.). Justice Baer asserts, "[u]tilizing the *Speranza* Court's definition of 'frequent,' a minor could arguably sit at the bar or have alcoholic beverages served at an unsupervised table so long as it was the minor's first or second time in the licensed facility." *Id.* at 6. However, under *Speranza*, whether it was a particular minor's first or second time in the establishment is of no moment. The *Speranza* Court explained the Bureau's burden does not include proving "the *same* minor or minors" frequented the premises in order to establish a violation of Section 4-493(14), but can sustain a "frequenting" count by proving "a course of conduct" by the licensee. *Speranza*, 206 A.2d at 294. Accordingly, pursuant to subsection (e), a licensee may not engage in a course of conduct of allowing minors to sit at a bar or serving alcoholic beverages at a table containing unsupervised minors. The same is true for subsection (c). A licensee may not engage in a course of conduct of allowing minors to be present in a licensed premises without the requisite number of supervisors. Further, Section 4-493(14) makes clear the prohibition does not apply to public venues, performing arts facilities, and ski resorts, and thus we find nothing nonsensical regarding the use of the word "frequenting" with respect to those establishments.[9]

---

[9] We likewise reject the contention of the Bureau and the dissent below that *Bateman-Gallagher* and *CIC Investors* somehow demonstrate *Speranza*'s definition of "frequenting" is unclear. In her dissent below, Judge McCullough posited that *Bateman-Gallagher* sustained a frequenting count based on two minors entering a bar on a single occasion. *See* 2017 WL 1365605 at *5 (McCullough, J., dissenting). Judge McCullough's reading is factually correct, but we note the appellant in *Bateman-Gallagher* failed to invoke *Speranza* or specifically challenge the "frequenting" charge. Furthermore, the discussion in *Bateman-Gallagher* regarding the "frequenting" charge consists of exactly two sentences, which did not refer to the *Speranza* doctrine. As such, we reject the notion that *Bateman-Gallagher* demonstrates that the *Speranza* definition of "frequenting" is unclear.

Similarly, Judge McCullough opined this case is analogous to *CIC Investors* as in both cases the licensee "engaged in an impermissible course of conduct" by "'actively acquiescing to the presence of minors [on one occasion].'" *Jet-Set*, 2017 WL 1365605 at

Accordingly, we conclude the tribunals below and the Commonwealth Court correctly held the Bureau failed to establish that Jet-Set permitted minors to "frequent" its premises under the circumstances of this case. Further, we reiterate the holding of *Speranza* and expressly apply it to Section 4-493(14) in its current form: "to 'frequent,' in the context of [Section 4-493(14)], means to visit often or to resort to habitually or to recur again and again, or more than one or two visits" and to sustain a frequenting count against a licensee, the Bureau does not have to prove "that the **same** minor or minors come to the premises habitually," but instead must show "that, as a course of conduct, licensees permit minors to come on the premises" in violation of Section 4-493(14) and its enumerated exceptions. *Speranza*, 206 A.2d at 294 (emphasis in original).

The order of the Commonwealth Court is affirmed.

Chief Justice Saylor and Justices Todd, Donohue and Wecht join the opinion.

Justice Baer files a dissenting opinion.

Justice Mundy files a dissenting opinion in which Justice Baer joins.

---

*5 (McCullough, J., dissenting), *citing CIC Investors*, 13 Pa. D. & C. 4th at 525. But the single incident at issue in *CIC Investors* was indeed extraordinary, and involved the presence of over 1,000 minors. *CIC Investors*, 13 Pa. D. & C. 4th at 519. Furthermore, all of the minors in *CIC Investors* were invited to the licensed premises for a "teen night," easily distinguishable from the scenario in this case, notwithstanding the fact the minors gained entry to Jet-Set using identification that showed they were underage. *Id.* at 525 ("[w]here the number of minors at issue is small and/or the minors have not been invited onto the premises by licensee, it would clearly be inappropriate to find that a single visit by minors supports a charge of permitting frequenting. But where the number of minors at issue is large and those minors were invited onto the premises by licensee (a scenario not faced by either *Speranza* or its progeny) it would be equally inappropriate to deny that licensee has permitted minors to frequent his establishment").