**[J-44-2020] [MO: Baer, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

COMMONWEALTH OF PENNSYLVANIA,    :    No. 69 MAP 2019

          Appellant    :    Appeal from the Order of the

   :    Superior Court at No. 1091 MDA

   :    2018 dated March 7, 2019 Affirming

          v.    :    in Part and Reversing in Part the

   :    Order of the Franklin County Court

   :    of Common Pleas, Criminal

BETH ANN MASON,    :    Division, at No. CP-28-CR-0002352-

   :    2017 dated June 26, 2018.

          Appellee    :

   :    ARGUED: May 19, 2020

---

## CONCURRING OPINION

**JUSTICE DOUGHERTY**                      **DECIDED: March 25, 2021**

I join the majority opinion in full. I feel compelled, however, to address several aspects of Justice Wecht's dissenting position that I view differently. In my learned colleague's view, "this Court's Wiretap Act decisions have strayed impermissibly from the statute's unambiguous language." Dissenting Opinion (Wecht, J.) at 1. Justice Wecht asserts, as he did in his concurring opinion in *PSP v. Grove*, 161 A.3d 877, 902-07 (Pa. 2017) (Wecht, J., concurring), that "for over twenty years now this Court has mistakenly applied the 'reasonable expectation of privacy' test — a standard used to determine whether a 'search' has occurred under the Fourth Amendment — in matters arising under the Wiretap Act." Dissenting Opinion (Wecht, J.) at 2. *See* 18 Pa.C.S. §5702 (defining an "oral communication" as "[a]ny oral communication uttered by a person possessing an expectation that such communication is not subject to interception under circumstances justifying such expectation"). Discerning no justification for what he views as a conflation

of the statutory and constitutional standards, Justice Wecht declares the time has come for us to expressly repudiate its originating source: *Agnew v. Dupler*, 717 A.2d 519, 523 (Pa. 1998) (interpreting Section 5702 of the Wiretap Act and resolving that "one cannot have an expectation of non-interception absent a finding of a reasonable expectation of privacy"). Dissenting Opinion (Wecht, J.) at 2, 5. The majority correctly responds by pointing out that no one has asked us to take that substantial step in this appeal. Majority Opinion at 10 n.9. In my view, this explanation supplies reason enough not to upend, *sua sponte*, longstanding precedent of this Court. But a few other reasons are also worth mentioning.

There is, for starters, the doctrine of *stare decisis*. For whatever reasons, issues implicating our adherence (or not) to prior precedent seem to be cropping up more and more in this Court's jurisprudence as of late. *See, e.g.*, *Commonwealth v. Alexander*, 243 A.3d 177 (Pa. 2020) (overruling *Commonwealth v. Gary*, 91 A.3d 102 (Pa. 2014), and its adoption of the federal automobile exception). And, rather regrettably, calls to break away from some of our earlier decisions increasingly have been prompted not by the litigants themselves, but by members of this Court acting *sua sponte*. *See, e.g., Commonwealth v. Reid*, 235 A.3d 1124, 1160-61, 1168 (Pa. 2020) (declining the dissenting justices' requests to overrule *sua sponte Commonwealth v. Abdul-Salaam*, 812 A.2d 497 (Pa. 2002) (interpreting the new constitutional right exception to the PCRA's timebar), *Commonwealth v. Peterkin*, 722 A.2d 638 (Pa. 1998) (declaring the PCRA is jurisdictional in nature), and their progeny); *Commonwealth v. Le*, 208 A.3d 960, 976 n.17 (Pa. 2019) (rejecting the dissent's suggestion that we should overturn our decision in *Commonwealth v. Smith*, 131 A.3d 467 (Pa. 2015), where the appellant had not asked that we do so).

My own views on *stare decisis* and my corresponding discomfort with the Court's at-times inconsistent treatment of those principles are now well documented, so I will not

repeat them again here. *See, e.g.*, *Alexander*, 234 A.3d at 211-15 (Dougherty, J., dissenting). It is enough to say that, in my respectful view, where we must weigh the heavy decision whether to overrule a prior precedent — especially one that has been relied upon for decades, like *Agnew* — there must be a special justification for changing course. *See id.* This need for a special justification persists whether the case turns on statutory, constitutional, or some other grounds.[1]

Where, however, the relevant issue in a case turns exclusively on an interpretation of some statutory text, the bar for overruling an earlier precedent is almost always higher. Not only do principles of *stare decisis* automatically assume greater force in a case like that (because the legislature can prospectively amend the statute it if disagrees with our interpretation), but, occasionally, there is one particular statutorily-imposed presumption that comes into play and raises the bar higher still: 1 Pa.C.S. §1922(4). This presumption instructs that "when a court of last resort has construed the language used in a statute, the [legislature] in subsequent statutes on the same subject matter intends the same construction to be placed upon such language." 1 Pa.C.S. §1922(4). *See, e.g.*, *PSP, Bureau of Liquor Control Enf't v. Jet-Set Rest., LLC*, 191 A.3d 817, 823 (Pa. 2018) ("we may presume that, where this Court has previously interpreted certain statutory language, and that language is retained in subsequent amendments to the same statute, the

---

[1] To be clear, I do not here advocate for "everlasting adherence to *Agnew*'s" interpretation. Dissenting Opinion (Wecht, J.) at 8. Nor have I remotely implied a belief that *stare decisis* presents an "absolute rule[,]" either with respect to this case or any other. *Id.* at 7. But, in his effort to demonstrate that I have supposedly "miss[ed] the point" of his argument, *id.* at 6, Justice Wecht actually misses mine. I do not doubt that there may be a "mountain of decisions overturned by courts every year[.]" *Id.* at 7. The point, though, is that we ought not to overrule prior precedent *sua sponte*, without any request by or advocacy from the parties. Thus, while I acknowledge there is facial appeal to Justice Wecht's argument that the *Agnew* Court's interpretation is wrong, no litigant has yet had an opportunity to provide a contrary argument. We simply cannot — or should not — overrule precedent under such circumstances.

legislature approved of and intended to uphold that interpretation"); *Commonwealth v. Wanamaker*, 296 A.2d 618, 624 (Pa. 1972) ("It is well settled that the failure of the legislature, subsequent to a decision of this Court in construction of a statute, to change by legislative action the law as interpreted by this Court creates a presumption that our interpretation was in accord with legislative inten[t].") (internal quotations and citation omitted).

The post-*Agnew* legislative history underlying Section 5702 of the Wiretap Act highlights the significance of the Section 1922(4) presumption. For example, I note that in the twenty-two-year span since we decided *Agnew*, the legislature has amended Section 5702 of the Wiretap Act **four times**, and yet it has never once seen fit to statutorily alter *Agnew*'s interpretation of the term "oral communication." *See* 2002, Dec. 9, P.L. 1350, No. 162, §3; 2012, Oct. 25, P.L. 1634, No. 202, §1; 2017, July 7, P.L. 304, No. 22, §1; 2020, June 5, P.L. 246, No. 32, §2. Perhaps most telling of all, shortly after we issued our decision in *Grove* in 2017, the legislature specifically amended the statute's definition of "oral communication," but it left completely intact the portion of the statute interpreted in *Agnew*, *i.e.*, the phrase "uttered by a person possessing an expectation that such communication is not subject to interception under circumstances justifying such expectation." 18 Pa.C.S. §5702. The legislature's decision in this regard might strongly suggest it actually found *Agnew*'s interpretation of Section 5702 to be consistent with legislative intent. *See, e.g.*, 1 Pa.C.S. §1922(4); *Jet-Set*, *supra*; *Wanamaker*, *supra*.

Of course, I recognize this is not the only conceivable conclusion that can be drawn from the circumstances. One might argue the legislature simply didn't notice we "got it wrong" in *Agnew*; that argument has (unfortunately) prevailed in other cases where members of this Court endeavored to overrule prior statutory interpretations with which they disagreed. *See Commonwealth v. Small*, 238 A.3d 1267, 1285 (Pa. 2020)

(overruling precedent establishing the "public record presumption" to the PCRA and declaring application of the Section 1922(4) presumption is discretionary, not mandatory, in part because the legislature allegedly is ill-equipped to "detect our error[s]" and "marshal the resources to correct [them]").[2]  But it's highly questionable in my view whether that argument can bear serious scrutiny here.  Justice Nigro raised precisely the same objection in *Agnew* that Justice Wecht now advances — meaning the legislature has had more than two decades to consider and, if necessary, correct it.  And it's not exactly as if the issue has disappeared since then.  As Justice Wecht recognizes, federal courts have continued to acknowledge the divergent interpretations.  *See Kelly v. Borough of Carlisle*, 622 F.3d 248, 257 (3d Cir. 2010) (observing *Agnew* "squelched the distinction developing in some lower court cases between a reasonable expectation of non-interception and an expectation of privacy"); *Peruto v. Roc Nation*, 385 F.Supp.3d 384, 388 n.6 (E.D. Pa. 2019) (deeming Justice Nigro's concurrence in *Agnew* "persuasive" but explaining it was bound by the *Agnew* majority's position).  There is also Justice Wecht's recent and thorough exposition of the issue in *Grove*.  *See Grove*, 161 A.3d 877 at 902-06 (Wecht, J., concurring).  To suggest these various judicial opinions have all gone unnoticed by the legislature might appear to some as foolhardy.[3]

---

[2] Justice Wecht cites *Small* and asserts that "[i]t is well-settled that the burden of correcting our own errors does not rest entirely on the shoulders of the General Assembly."  Dissenting Opinion (Wecht, J.) at 8-9.  But, contrary to this characterization of the matter as being "well-settled," I note *Small* was decided just months ago, it addressed the Section 1922(4) presumption issue only tangentially, and the opinion cited no caselaw to support what appears to be a first-of-its-kind decision declining to apply the presumption on the basis of the legislature's purported impotence.

[3] There are countless examples, new and old, in which the legislature has proven just how adept it can be when it truly disagrees with a statutory interpretation rendered by this Court.  *See, e.g.*, *Commonwealth v. Forsythe*, 217 A.3d 273, 278-79 (Pa. Super. 2019) ("Just over a month after the Supreme Court issued its decision in [*Commonwealth v. Hlubin*, 208 A.3d 1032, 1052 (Pa. 2019) (holding Section 8953(a)(3) of the Municipal Police Jurisdiction Act (MPJA) does not authorize police officers to cross jurisdictional

The same could arguably be said of any suggestion the legislature has been unable to "marshal the resources" to amend the statute. *Small* , 238 A.3d at 1285. As noted, the legislature has been anything but complacent with respect to the Wiretap Act, having repeatedly amended it over the years, most recently in 2020. Yet despite these occurrences — and even in the face of multiple, express invitations to overrule *Agnew* — the legislature has held firm for more than two decades, finding no reason to tinker with the *Agnew* Court's interpretation of the term "oral communication." By repeatedly amending Section 5702 and declining each and every time to alter the text this Court interpreted in *Agnew*, there is a strong argument to be made that, at least from the legislature's perspective, *Agnew* was correctly decided.

I raise these points, and use the circumstances of *Agnew* as an example, to underscore the high bar that must be met before we rush to overrule longstanding precedent of this Court, particularly in cases involving statutory interpretation. And while I acknowledge there is room for healthy debate over **when** this Court should elect to invoke the Section 1922(4) presumption, my larger point is that the parties should be afforded the chance to weigh in on the matter when possible.[4] To do otherwise deprives the Court of potential advocacy demonstrating that a prior decision interpreting a statute

---

lines to participate in pre-arranged sobriety checkpoints)], the legislature amended, *inter alia*, [S]ection 8953(a)(3)" with the "explicit[] inten[t] to reverse the Supreme Court's interpretation of the MPJA in *Hlubin*.").

[4] For instance, in Justice Wecht's view, the presumption "should control only when there are legitimate reasons to assume that the General Assembly's inaction holds interpretive significance." Dissenting Opinion (Wecht, J.) at 9. Respectfully, I do not favor such a requirement, as it allows a subjective assessment of what legislative history is "significant" and what is not, effectively undermining the value of the presumption. To me, it makes more sense to simply allow Section 1922(4) to operate as it was intended — as a **presumption** that can be rebutted with objective evidence. And while I appreciate Justice Wecht's effort to provide such evidence here to support his view that the presumption should not apply relative to *Agnew*, again, the real issue is that the parties have not had an opportunity to supply their own, potentially contradictory proofs.

— even one that appears wrong on its face — might have actually been in accord with legislative intent, rending judicial correction both unnecessary and improper.