MFW Wine Co., LLC, A6 Wine    :
Company, and GECC2 LLC d/b/a   :
Bloomsday Cafe,                :
          Petitioners     :
                           :
        v.             :
                           :
Pennsylvania Liquor Control Board,  :   No. 251 M.D. 2020
          Respondent    :   Argued: November 17, 2021

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge[1]
              HONORABLE PATRICIA A. McCULLOUGH, Judge
              HONORABLE ANNE E. COVEY, Judge
              HONORABLE MICHAEL H. WOJCIK, Judge
              HONORABLE CHRISTINE FIZZANO CANNON, Judge

OPINION BY
JUDGE COVEY                      FILED: May 27, 2022

Before this Court is MFW Wine Co., LLC's (MFW), A6 Wine Company's (A6), and GECC2 LLC d/b/a Bloomsday Café's (Bloomsday Café) (collectively, Petitioners) Application for Relief Seeking Damages, Costs, Interest and Attorneys' Fees (Damages Application) from the Pennsylvania Liquor Control Board (PLCB).[2] On May 1, 2020, this Court granted peremptory judgment in mandamus and summary declaratory relief in Petitioners' favor and against the PLCB because the PLCB failed to carry out the General Assembly's directive to

---

[1] This case was assigned to the opinion writer before January 7, 2022, when Judge Cohn Jubelirer became President Judge.

[2] "The PLCB regulates the distribution of beverage alcohol in Pennsylvania, operates [580 Fine W]ine and [Good S]pirits stores statewide, and licenses 20,000 alcohol producers, retailers, and handlers." www.media.pa.gov/pages/liquor-control-board-details.aspx?newsid=566 (last visited May 26, 2022).

permit properly licensed companies to sell and deliver special orders (SOs) directly to their customers without added handling fees.[3]

**Background**

Before June 8, 2016, SO customers, like Bloomsday Café, that wished to purchase a class, variety, or brand of liquor or alcohol not then available from a PLCB Fine Wine and Good Spirits store (PLCB Store) could place SOs for the items with licensed importers or vendors, like MFW or A6. However, the licensed importers or vendors were required to deliver the SOs to PLCB Stores, where the customers had to pick them up. The PLCB charged the customers handling fees for each bottle purchased in this process.

On June 8, 2016, by enacting Section 3 of Act 39,[4] the General Assembly amended Section 305(a) of the Liquor Code[5] to provide that SOs may be delivered from a licensed importer or vendor directly to a customer. Section 3 of Act 39 also states that the PLCB may not assess a handling fee on [SOs], and that "[t]he [PLCB] **shall**, by January 1, 2017, implement a procedure for processing [SOs] . . . ." (Emphasis added.) Further, on July 13, 2016, the General Assembly passed an omnibus amendment to implement the Commonwealth's 2016-2017 budget (Section 20 of Act 85 of 2016[6]), which added Section 1799.2-E to The Fiscal Code,[7] and therein provided that "the [PLCB] **may** implement a procedure for processing [SOs] . . . by June 1, 2017." (Emphasis added.) The PLCB took the position that implementing an SO processing procedure was discretionary, and the

---

[3] SO customers are largely PLCB licensees (i.e., establishments authorized to sell alcohol).
[4] Act of June 8, 2016, P.L. 273.
[5] Act of April 12, 1951, P.L. 90, *as amended*, 47 P.S. § 3-305(a).
[6] Act of July 13, 2016, P.L. 664.
[7] Act of April 9, 1929, P.L. 343, *as amended*, added by Section 20 of the Act of July 13, 2016, P.L. 664, 72 P.S. § 1799.2-E (PLCB Procedure).

June 1, 2017 date was merely advisory. As a result, to date, the PLCB has not implemented an SO processing procedure, thereby preventing licensed importers and vendors from directly shipping SOs to their customers, and the PLCB continues to assess handling fees on all SOs.

On March 6, 2020, Pennsylvania Governor Tom Wolf (Governor Wolf) issued a Proclamation of Disaster Emergency (Proclamation) in response to the COVID-19 pandemic. *See Wolf v. Scarnati*, 233 A.3d 679 (Pa. 2020); *see also* "Process to Reopen Pennsylvania."[8] On March 16, 2020, the PLCB announced the indefinite closure of the PLCB Stores and licensee service centers effective March 17, 2020, to reduce the spread of COVID-19.[9] On March 18, 2020, the PLCB, with Governor Wolf's authorization, mandated that all retail licensees, clubs, permittees, and producers cease sales of food and alcohol until further notice.[10]

On April 15, 2020, MFW and A6 filed a petition for review in this Court's original jurisdiction seeking to enforce their statutory right to direct ship SOs from licensed importers and/or vendors to customers.[11] On April 16, 2020, MFW filed an emergency motion for peremptory judgment in mandamus, and special injunctive and declaratory relief (Motion), and requested an expedited hearing.[12]

---

[8] *See* www.governor.pa.gov/process-to-reopen-pennsylvania/last updated Nov. 19, 2020 (last visited May 26, 2022). On March 19, 2020, Governor Wolf issued an Executive Order that compelled the closure of the physical operations of all non-life sustaining Commonwealth of Pennsylvania businesses. *See id*. On June 3, 2020, Governor Wolf renewed the Proclamation for an additional 90 days. Governor Wolf renewed the Proclamation several times thereafter. *See id*.

[9] *See* www.media.pa.gov/pages/liquor-control-board-details.aspx?newsid=562 (last visited May 26, 2022).

[10] *See* www.media.pa.gov/pages/liquor-control-board-details.aspx?newsid=563 (last visited May 26, 2022).

[11] Petitioners explain that they did not initiate this action before Governor Wolf closed the PLCB Stores because it was not until their Pennsylvania revenue dropped to $0 that they had the economic motivation to lead the charge. *See* Damages Appl. at 14-15.

[12] "Consistent with the applicable rules of appellate procedure, the Court [] treated Petitioners' [M]otion as an application for special and summary relief. *See* Pa.R.A.P. 123, 1532." *MFW Wine*

On April 22, 2020, MFW and A6 filed an amended petition for review (Amended Petition), adding Bloomsday Café as a Petitioner. Also on April 22, 2020, the PLCB re-opened its SO program to allow retail licensees with wine expanded permits (i.e., those permitted to sell wine to-go) to pick up SOs from designated PLCB Stores beginning April 24, 2020.[13] On April 28, 2020, this Court conducted a hearing on the Motion.

On May 1, 2020, the Court granted summary relief in Petitioners' favor with respect to Amended Petition Count III (Declaratory Judgment), and declared that Section 305(a) of the Liquor Code, *as amended*, (1) prohibits the PLCB from charging a handling fee on SOs delivered directly to customers, and (2) requires the PLCB to implement a procedure to process SO direct shipments. With respect to Amended Petition Count I (Mandamus), the Court granted summary relief in Petitioners' favor and issued a writ of mandamus: (1) directing the PLCB to allow licensed vendors and licensed importers to ship SOs directly to customers; and (2) directing the PLCB to implement a procedure for processing SO direct shipments. The Court denied the Motion in all other respects (Count II (Injunctive Relief)). *See MFW Wine Co., LLC v. Pa. Liquor Control Bd.*, 231 A.3d 50 (Pa. Cmwlth. 2020) (*MFW I*) (Brobson, J., single judge op.), *aff'd per curiam*, 247 A.3d 1008 (Pa. 2021).

---

*Co., LLC v. Pa. Liquor Control Bd.*, 231 A.3d 50, 52 n.2 (Pa. Cmwlth. 2020) (*MFW I*) (Brobson, J., single judge op.), *aff'd per curiam*, 247 A.3d 1008 (Pa. 2021).

[13] *See* www.media.pa.gov/pages/liquor-control-board-details.aspx?newsid=566 (last visited May 26, 2022). Thereafter, the PLCB progressively expanded its access to the PLCB Stores to retail customers and licensees. *See* www.media.pa.gov/pages/liquor-control-board-details.aspx?newsid=569 (last visited May 26, 2022). On May 1, 2020, the PLCB announced that it would resume fulfillment of retail licensees' wine and spirits orders through the PLCB Stores and licensee service centers. *See id*. By the end of June 2020, 559 PLCB Stores and all 13 of the PLCB's licensee service centers were open with limited in-store public access. *See* www.lcb.pa.gov/About-Us/News-and-Reports/Documents/PLCB%20FY%202019-2020%20Annual%20Report.pdf (last visited May 26, 2022) at 25.

Notably, this Court concluded that "[t]he intent of the General Assembly in Act 39 is clear and unambiguous." *MFW I*, 231 A.3d at 54. The Court explained:

> Section 305(a) of the Liquor Code and Section 1799.2-E of [T]he Fiscal Code are *in pari materia*. With respect to [SOs], the Act 39 amendments to Section 305(a) of the Liquor Code did the following: (a) expressly authorized licensed vendors and importers to ship [SOs] directly to their customers; (b) directed that payment for such orders be made to [the] PLCB; (c) required PLCB authorization prior to shipment; (d) prohibited [the] PLCB from charging a handling fee for [SOs] directly shipped to customers; (e) placed liability for all [SOs] directly shipped to customers on the licensed vendor or importer until delivery to the customer; (f) required [the] PLCB to implement a procedure for processing [SOs] for direct shipment to customers by January 1, 2017; and (g) allowed [the] PLCB to continue to process [SOs] at its stores. The only effect Section 1799.2-E of [T]he Fiscal Code had on Section 305(a) of the Liquor Code was to allow [the] PLCB to implement the procedures it is required to implement under Section 305(a) [of the Liquor Code] by June 1, 2017, instead of January 1, 2017.

*MFW I*, 231 A.3d at 55-56 (footnote omitted). Accordingly, this Court declared: "As the Court finds the language of the statutes unambiguous, it affords no deference to [the] PLCB's proffered construction. *Seeton v. Pa. Game Comm'n*, 937 A.2d 1028, 1037 (Pa. 2007) ('While an agency's interpretation of an ambiguous statute it is charged with enforcing is entitled to deference, courts' deference never comes into play when the statute is clear.')." *MFW I*, 231 A.3d at 57 n.12.

> Specifically relative to Mandamus, this Court ruled:

> [A]ll of the elements for issuance of a writ of mandamus are present. Mandamus is appropriate where, as is the case here, an agency is operating under a "mistaken view of the law that it has discretion to act when it actually does not." *Weaver v. Pa. Bd. of Prob. [&] Parole*, 688 A.2d 766, 776 (Pa. Cmwlth. 1997) (*en banc*) (citing *C[n]ty. of Allegheny*

5

*v.* [*Commonwealth*], 490 A.2d 402 (Pa. 1985)); *see also A.S. v. Pa. State Police*, 143 A.3d 896 (Pa. 2016) (affirming award of mandamus based on judicial construction of ambiguous statute). Section 305(a) of the Liquor Code, properly construed, imposes a mandatory duty on [the] PLCB to accept and process [SOs] for direct shipment to customers. It further imposes a mandatory duty on [the] PLCB to implement a procedure for doing so. [The] PLCB has yet to comply with these mandatory duties, depriving licensed vendors, licensed importers, and customers of their statutory right to direct shipment of [SOs] permitted under Section 305(a) of the Liquor Code.

*MFW I*, 231 A.3d at 57.

This Court further declared:

[T]he Court recognizes that the time established by the General Assembly for [the] PLCB to implement a direct shipment [SO] process has long passed. Nonetheless, based on the credible evidence adduced during the hearing, the Court is satisfied that implementing a new process for the direct shipment of [SOs] authorized by Act 39 is neither as simple as Petitioners suggest nor as complicated (or expensive) as [the] PLCB would have the Court believe. [The] PLCB must be afforded a reasonable amount of time to implement thoughtfully a process, perhaps even an interim one as Petitioners' counsel suggested during the hearing, to provide licensed vendors, licensed importers, and customers a[n] [SO] direct shipment alternative. The Court is confident that [the] PLCB has the resources and ingenuity to do so without unreasonable delay.

In not setting a deadline for [the] PLCB to act, the Court's restraint is also based in part on [the] PLCB's recent decision to re-open [SO] pick[-]up at designated PLCB facilities, which [the] PLCB suspended when it closed all PLCB [S]tores in response to the COVID-19 pandemic and executive action by [Governor Wolf]. The absence of a direct shipment option for [SOs], coupled with the closure of all PLCB [S]tores, had an obvious impact on Petitioners - which, through their unrebutted testimony at the hearing, established that their businesses rely on the sale, purchase, and delivery of [SO] wines in

6

> Pennsylvania.  The fact that Petitioners now have some way of selling, ordering, processing, and fulfilling [SOs] through [the] PLCB, though not all of what Act 39 promised, is an improvement over the recent circumstances that prompted them to initiate this lawsuit.
>
> For these reasons, the Court will not, *at this time*, endeavor to set a date by which time [the] PLCB must comply with this Court's Order.[14]

*MFW I*, 231 A.3d at 57-58 (footnote omitted).  The Court added: "The Court will not rule at this time on Petitioners' request for monetary damages under [Section 8303 of the Judicial Code,] 42 Pa.C.S. § 8303, costs, and attorneys' fees.  To the extent Petitioners wish to pursue such additional relief, they may do so by separate application."  *MFW I*, 231 A.3d at 57 (footnote omitted).

---

[14] In *Log Cabin Property, L.P. v. Pennsylvania Liquor Control Board* (Pa. Cmwlth. No. 292 M.D. 2020, filed May 27, 2022) (*Log Cabin*), the PLCB represented:

> Notwithstanding its disagreement with, and appeal of, the Court's May 1, 2020 Order, the PLCB continues to take steps to implement the Court's directive that the PLCB implement a procedure for processing direct shipments within a reasonable time period.  The PLCB will continue to do so during the pendency of the *MFW* [*I*] appeal and, thus, the pendency of the requested stay.

*Log Cabin*, PLCB Appl. to Stay Log Cabin's Complaint at 5 n.2.  However, at the November 17, 2021 oral argument before this Court, the PLCB admitted that it has not implemented a direct SO delivery procedure, or offered an interim SO solution.  Although the PLCB's counsel (Counsel) referenced the PLCB's intended roll-out of a new Enterprise Resource Planning System that will include changes to the PLCB's SO process, he did not represent what the changes would be, and he declared that the earliest the purported roll-out will occur is July 2022.

Counsel suggested that, because the Court did not set a specific date for the PLCB's compliance with the May 1, 2020 Order, it has not violated that Order, and whether the July 2022 roll-out is an unreasonable delay is a question for a contempt proceeding.  When this Court asked why the PLCB has not simply stopped charging the SO handling fee pending the roll-out, Counsel represented that it cannot do so.  When asked what would happen if licensees refused to pay the handling fees, Counsel declared that the PLCB would not release the SOs to them.

On May 27, 2020,[15] the PLCB appealed to the Pennsylvania Supreme Court (30 MAP 2020) which, on March 25, 2021, issued a Per Curiam Order (without an opinion) affirming this Court's May 1, 2020 Order.

On May 25, 2021, Petitioners filed the Damages Application. The PLCB filed an answer to the Damages Application on June 11, 2021. By September 15, 2021 Order, this Court directed that the Damages Application shall be listed for argument seriately with the PLCB's Preliminary Objection filed in *Log Cabin Property, L.P. v. Pennsylvania Liquor Control Board* (Pa. Cmwlth. No. 292 M.D. 2020, filed May 27, 2022) (*Log Cabin*).[16] This Court limited argument on the Damages Application to: (1) whether the PLCB is a "person" under Section 8303 of the Judicial Code; and (2) whether Petitioners may recover mandamus damages from the PLCB. *See* September 15, 2021 Order.[17]

## Discussion

Section 8303 of the Judicial Code specifies that "[a] **person** who is adjudged in an action in the nature of mandamus to have failed or refused without lawful justification to perform a duty required by law **shall be liable in damages** to

---

[15] On May 7, 2020, Petitioners filed an application for relief seeking leave to amend their Amended Complaint (Amendment Application) to allow Bloomsday Café to plead allegations in support of a class action and state its claim for mandamus damages on a class-wide basis. The PLCB filed an answer in opposition to the Amendment Application on May 26, 2020. However, because the PLCB filed a notice of appeal to the Pennsylvania Supreme Court and, after its ruling, Petitioners filed the instant Damages Application, this Court has not yet ruled on the Amendment Application.

[16] The allegations in *Log Cabin* are interrelated with those raised herein. On May 6, 2020, Log Cabin filed an application to consolidate these matters. By June 4, 2020 Order, this Court denied the request without prejudice pending a similar application having been filed in this case. To date, Log Cabin has not filed a new consolidation application in *Log Cabin*, nor has a similar application been filed in this case.

[17] On April 8, 2022, the PLCB filed an Application for Post-Submission Communication. On April 13, 2022, Petitioners filed an answer in opposition to the Application for Post-Submission Communication.

the person aggrieved by such failure or refusal." 42 Pa.C.S. § 8303 (emphasis added).

## (1) *Person* **Defined**

The PLCB argues that, as a Commonwealth agency,[18] the PLCB is not a *person* under Section 8303 of the Judicial Code because the definition of *person* in Section 1991 of the Statutory Construction Act of 1972 (SCA), 1 Pa.C.S. § 1991, excludes Commonwealth government entities. Petitioners respond that the PLCB is a *person* under Section 8303 of the Judicial Code because the current definition of *person* in the SCA does not exclude the Commonwealth and its agencies.

Neither Section 8303 of the Judicial Code, nor Section 102 of the Judicial Code, 42 Pa.C.S. § 102 (definitions), define *person*. This Court has held that "[w]hen a term is not defined in a statute, we resort to the definitions provided in [S]ection 1991 of the [SCA.]" *Muscarella v. Commonwealth*, 87 A.3d 966, 974 (Pa. Cmwlth. 2014). Section 1991 of the SCA defines ***person*** to "[i]nclude[] a corporation, partnership, limited liability company, business trust, other association, government entity (**other than the Commonwealth**), estate, trust, foundation or natural person." 1 Pa.C.S. § 1991 (emphasis added). Section 1991 of the SCA specifies that the definitions supplied therein apply "when used in any statute finally enacted on or after September 1, 1937, **unless the context clearly indicates otherwise**[.]" *Id*. (emphasis added). Therefore, the Commonwealth is not a "person," as that term is defined in Section 1991 of the SCA, unless the context in which the term appears clearly indicates otherwise.

---

[18] Section 102 of the Commonwealth Attorneys Act lists the PLCB among the Commonwealth's independent agencies. *See* Act of October 15, 1980, P.L. 950, *as amended*, 71 P.S. § 732-102.

Importantly, Section 1991 of the SCA's definition of *person* excludes only "the Commonwealth." 1 Pa.C.S. § 1991. The term *Commonwealth*, as used therein could have, but does not, expressly include Commonwealth agencies, nor does it use the broader term "Commonwealth party," as used in Section 8501 of what is commonly known as the Sovereign Immunity Act.[19] 42 Pa.C.S. § 8501. Rather, Section 1991 of the SCA defines *Commonwealth* merely as "[t]he Commonwealth of Pennsylvania." *Id.* Neither the SCA, nor Section 102 of the Judicial Code, define "Commonwealth of Pennsylvania."[20] Moreover, this Court has stated:

> [T]he Commonwealth government and its various agencies and officers are separate entities and [] '**the Commonwealth of Pennsylvania**, **itself** . . . **is clearly not a Commonwealth agency**[.] . . .' *Bonsavage v. Borough of Warrior Run*, 676 A.2d 1330, 1331 (Pa. Cmwlth. 1996) (emphasis in original)[;] [*s*]*ee also Tork-Hiis v. Commonwealth*, . . . 735 A.2d 1256 ([Pa.] 1999).

*Finn v. Rendell*, 990 A.2d 100, 105 (Pa. Cmwlth. 2010) (emphasis added).

The *Finn* Court reasoned:

> The Commonwealth comprises three branches of government, each divided into many independent subparts. The essence of an action in mandamus is that a specific actor has a non-discretionary duty to perform a particular act. A request that the Commonwealth be ordered to do something begs the question which of the many actors comprising state government is to be held accountable. Since merely naming the Commonwealth is insufficient to state a claim against a Commonwealth party, [*see*] *Tork-Hiis*, it would seem self-evident that if a specific state party can be identified as having a mandatory

---

[19] "Commonwealth party" is defined in Section 8501 of the Sovereign Immunity Act as "[a] Commonwealth agency and any employee thereof, but only with respect to an act within the scope of his office or employment." 42 Pa.C.S. § 8501.

[20] Although Section 102 of the Judicial Code's definition of *Commonwealth government* includes executive and independent "agencies of the Commonwealth[,]" 42 Pa.C.S. § 102 (*see also* "Commonwealth agency" definition), if this Court is bound solely by Section 1991 of the SCA's definition, as the PLCB asserts, then Section 102 of the Judicial Code definitions are inapplicable.

> or ministerial duty, that party must be the named defendant, both in order to make out a cause of action in mandamus and to effectuate enforcement of any ensuing order.

*Finn*, 990 A.2d a 106. Applying the *Finn* Court's logic here, it is reasonable to conclude that the General Assembly intended, by excluding *the Commonwealth* from the definition of *person* in Section 1991 of the SCA, that the Commonwealth itself could not be liable for mandamus damages under Section 8303 of the Judicial Code, but individual agencies could be so liable.

The PLCB cites *Commonwealth v. Runion*, 662 A.2d 617 (Pa. 1995), to support its position.[21] However, *Runion* is inapposite. First, the General Assembly legislatively superseded *Runion*.[22] *See Commonwealth v. Veon*, 150 A.3d

---

[21] The *Runion* Court reversed the trial court's order that directed the defendant to pay restitution to the Department of Public Welfare (DPW) pursuant to Section 1106 of the Crimes Code, 18 Pa.C.S. § 1106, because only *victims* were entitled to restitution. At that time, Section 1106(h) of the Crimes Code defined *victim* as "'[a]ny *person*, except an offender, who suffered injuries to his person or property as a direct result of the crime.' 18 Pa.C.S. § 1106(h)." *Runion*, 662 A.2d at 619 (emphasis added). Relying on the SCA's definition of *person*, the *Runion* Court held that, since DPW is "a Commonwealth entity," *id*. at 621, which was excluded from the SCA's definition of *person*, the Court stated it was constrained to conclude that DPW could not be a *victim* to whom restitution was due under Section 1106(h) of the Crimes Code, 18 Pa.C.S. § 1106(h). The *Runion* Court acknowledged that, although defining the term *victim* to include government *agencies* would favor the restitution statute's rehabilitative purpose, "it [wa]s for the legislature, and not for th[e Supreme] Court, to expand the meaning of the term 'victim' under [Section] 1106 [of the Crimes Code] so as to include governmental agencies . . . ." *Id*. at 621.

[22] Effective on July 2, 1995, two weeks *before* the Supreme Court decided *Runion* on July 18, 1995, the General Assembly amended Section 1106 of the Crimes Code to add "[a]ny other *government agency* which has provided reimbursement to the victim as a result of the defendant's criminal conduct" to the list of entities to whom the courts may order mandatory restitution. Section 1106(c)(1)(ii) of the Crimes Code, 18 Pa.C.S. § 1106(c)(1)(ii) (emphasis added); *see also* Section 1 of the Act of May 3, 1995, P.L. 999 (Spec. Sess. No. 1). In 2009, the Pennsylvania Supreme Court ruled, based on the legislative history of Section 1106 of the Crimes Code, the General Assembly's revisions, and the purpose of the restitution statute, that government agencies that paid money on a victim's behalf were also entitled to restitution. *See Commonwealth v. Brown*, 981 A.2d 893 (Pa. 2009). On October 24, 2018, the General Assembly amended the term *victim* to specifically include "an affected government *agency*[,]" and defined "affected government agency" to include "the Commonwealth," 18 Pa.C.S. § 1106(h) (emphasis added); *see also* Section 1 of the Act of October 24, 2018, P.L. 891, so there is no longer any doubt that the

11

435 (Pa. 2016). Second, the *Runion* Court construed a penal statute, which must be strictly construed, *see* Section 1928(b)(1) of the SCA, 1 Pa.C.S. § 1928(b)(1), whereas Section 8303 of the Judicial Code is to be "liberally construed to effect [its] object[] and to promote justice." Section 1928(c) of the SCA, 1 Pa.C.S. § 1928(c). Third, *Runion* did not involve the situation where, as here, a Commonwealth agency's conduct was contrary to and, in fact, defiant of, a statutory mandate. And, fourth, the *Runion* Court concluded that "[t]he definition of 'person' as found in the [SCA] was amended in 1992, in part, to exclude government entities of the Commonwealth," *Runion*, 662 A.2d at 621 n.4, when the definition amendment actually *added* government entit[ies]" as *persons*, while simultaneously excluding "the Commonwealth" from the definition, as discussed *supra*. 1 Pa.C.S. § 1991; *see also* Section 2 of the Act of December 18, 1992, P.L. 1333.

Moreover, the context of Section 8303 of the Judicial Code, effective June 27, 1978, clearly intends that mandamus damages may be assessed against a Commonwealth agency, just as the now-repealed Mandamus Act of 1893 (Mandamus Act)[23] did. Section 16 of the Mandamus Act[24] "provide[d,] in pertinent part: 'If a verdict is found for plaintiff and judgment is entered thereon, or if a judgment is given for him upon a demurrer, . . . he shall recover his damages and costs.' The [Mandamus A]ct [wa]s substantially reenacted at 42 Pa.C.S.[] § 8303 (1980 pamphlet)." *City of Pittsburgh v. Pa. Dep't of Transp.*, 416 A.2d 461, 463 n.3 (Pa. 1980). This Court has since ruled: "There is no doubt that mandamus damages are available under [Section 8303 of the Judicial Code] whenever **a public**

---

Commonwealth *and* its agencies are included among the parties for whom Pennsylvania courts may order to receive restitution. Notably, the General Assembly has not modified the definition of *person* in Section 1991 of the SCA to exclude Commonwealth *agencies*.

[23] Act of June 8, 1893, P.L. 345, *as amended*, *formerly* 12 P.S. §§ 1911-2002, repealed by the Act of April 28, 1978, P.L. 202.

[24] 12 P.S. § 1919 (repealed).

12

**agency**[’s]”[25] “failure to perform legally mandated ministerial duties results from an erroneous interpretation of the law.” *Stoner v. Twp. of Lower Merion*, 587 A.2d 879, 885 (Pa. Cmwlth. 1991) (emphasis added).

Notably, at the time Section 8303 of the Judicial Code was enacted, Section 1991 of the SCA defined *person* as “a corporation, partnership, and association, as well as a natural person[,]” *see Warner-CCC Inc. v. City of Altoona*, 374 A.2d 987, 988 (Pa. Cmwlth. 1977), thereby exposing the Commonwealth and its agencies to liability under Section 8303 of the Judicial Code, until the General Assembly excluded *the Commonwealth* in 1992. There is no indication that the General Assembly intended, by amending the SCA’s definition of *person* in 1992, to immunize Commonwealth agencies from mandamus damages.

Finally, based on the fact that the purpose of Section 8303 of the Judicial Code is to authorize mandamus damages against government actors that fail to perform their statutorily mandated duties, Pennsylvania courts have allowed mandamus damages to be assessed against Commonwealth agencies thereunder. *See Richard Allen Preparatory Charter Sch. v. Dep’t of Educ.*, 161 A.3d 415 (Pa. Cmwlth. 2017) (*en banc*), *aff’d*, 185 A.3d 984 (Pa. 2018); *see also KIPP Phila. Charter Sch. v. Dep’t of Educ.*, 161 A.3d 430 (Pa. Cmwlth. 2017) (*en banc*), *aff’d sub nom. Richard Allen Preparatory Charter Sch. v. Dep’t of Educ.*, 185 A.3d 984 (Pa. 2018).

Accordingly, this Court holds that, in the context presented here, the PLCB is a *person* subject to Section 8303 of the Judicial Code.

---

[25] Although the term *public agency* is not specifically defined in the Judicial Code, as stated previously, Section 102 of the Judicial Code defines *government agency* to include “[a]ny Commonwealth agency or any political subdivision or municipal or other local authority, or any officer or agency of any such political subdivision or local authority.” 42 Pa.C.S. § 102.

**(2) Mandamus Damages**

Petitioners also argue that they are entitled to costs and damages under Section 8303 of the Judicial Code, plus associated interest and attorneys' fees.[26] The PLCB responds that, although MFW is entitled to its taxable costs, Petitioners are not entitled to damages or related interest because the PLCB has sovereign immunity, and Petitioners are not entitled to attorneys' fees under the circumstances of this case. In the alternative, the PLCB requests that, if this Court determines that Petitioners are entitled to damages, interest, and/or attorneys' fees, that the Court allow discovery and/or conduct a hearing for Petitioners to prove them.

**Costs**

Regarding costs, Section 1726(a) of the Judicial Code provides, in relevant part:

(2) **The prevailing party should recover his costs from the unsuccessful litigant** except where the:

(i) Costs relate to the existence, possession or disposition of a fund and the costs should be borne by the fund.

(ii) Question involved is a public question or where the applicable law is uncertain and the purpose of the litigants is primarily to clarify the law.

(iii) Application of the rule would work substantial injustice.

---

[26] Petitioners claim MFW's taxable costs of $946.26, $102,291.49 in damages ($100,867.69 in MFW lost profits + $1,423.80 in A6 lost profits = $102,291.49), plus $6,194.27 in interest on their costs and damages ($946.26 MFW costs + $102,291,49 damages = $103,237.75) calculated at 6% per annum, for a total of $109,432.02. Petitioners also seek to recover $310,821.50 in attorneys' fees.

14

> (3) The imposition of actual costs or a multiple thereof may be used as a penalty for violation of general rules or rules of court.

42 Pa.C.S. § 1726(a) (emphasis added). This Court has specifically ruled that "the General Assembly provide[s] for the assessment of costs against the Commonwealth under [Section] 1726 [of the Judicial Code,]" when the Commonwealth and/or its agency is the unsuccessful litigant. *Inmates of B-Block v. Jeffes*, 483 A.2d 569, 571 (Pa. Cmwlth. 1984). Moreover, "sovereign immunity does not preclude an assessment of costs against the Commonwealth where the underlying suit was not barred . . . ." *Id*. at 572.

Where, as here, there is no fund to bear Petitioners' costs, the applicable law is certain, and application of the rule will not work a substantial injustice, Petitioners are entitled to recover allowable litigation costs from the PLCB. Accordingly, the parties agree that the PLCB owes MFW $946.26 in taxable costs pursuant to Section 1726(a)(2) of the Judicial Code.

However, the parties disagree regarding whether Petitioners are also entitled to damages, interest, and attorney's fees.

### Damages

Petitioners also seek damages from the PLCB arising from their successful mandamus action.[27] *See* Amended Pet. at 14. The PLCB responds that sovereign immunity protects it from having to pay Petitioners damages related to their mandamus action.

---

[27] Petitioners specifically claim that they "are entitled to recover $102,291.49 in damages they suffered as a result of the PLCB's failure to implement a procedure for direct delivery of [SOs]." Damages Appl. at 4. "MFW estimates that it lost $109,131.72 in gross sales during the state store closure period of March 16 to May 1, 2020." *Id*. "A6 estimates that it lost $14,238.00 in gross sales during the state closure period." *Id*. at 5.

Pursuant to Section 8303 of the Judicial Code, a party, including the PLCB, adjudged in a mandamus action "to have failed or refused without lawful justification to perform a duty required by law shall be liable in damages to the person aggrieved by such failure or refusal." 42 Pa.C.S. § 8303. "Damages are generally appropriate when a defendant fails to perform a ministerial duty, even when such failure results from an erroneous legal interpretation." *Maurice A. Nernberg & Assocs. v. Coyne*, 920 A.2d 967, 970 (Pa. Cmwlth. 2007); *see also Stoner*. Moreover, "the law is clear that sovereign immunity does not bar mandamus actions. *See Banfield v. Cortes*, 922 A.2d 36, 43 (Pa. Cmwlth. 2007) (quoting *Maute v. Frank*, . . . 657 A.2d 985, 986 ([Pa. Super.] 1995) ('Actions in mandamus are not subject to the defense of sovereign immunity.')." *Brimmeier v. Pa. Tpk. Comm'n*, 147 A.3d 954, 961 (Pa. Cmwlth. 2016), *aff'd*, 161 A.3d 253 (Pa. 2017); *see also Temple Univ. v. Dep't of Pub. Welfare*, 521 A.2d 986 (Pa. Cmwlth. 1987).

In addition, this Court has explained:

> Damages recoverable in mandamus are those incidental to the specific relief being sought. For example, where mandamus is issued to compel the reinstatement of a public employee in employment, the damages have regularly been confined to those arising from the absence of employment over the period, i.e., the loss of salary or net loss of income.

*Stoner*, 587 A.2d at 885 (citation omitted). "The damages must be clearly related to the defendant's failure to perform a mandatory ministerial function." *Sch. Dist. of Pittsburgh v. City of Pittsburgh*, 352 A.2d 223, 229 (Pa. Cmwlth. 1976). "In *Stoner*, this [C]ourt held that [] mandamus damages . . . do not include 'consequential damages or damages arising in connection with transactions or potential transactions with other parties.' *Id.* at 885." *Soni Props., LLC v. City of Reading* (Pa. Cmwlth.

16

No. 2559 C.D. 2009, filed May 28, 2010), slip op. at 8.[28]  "Black's Law Dictionary

. . . defines [consequential damages] as 'losses that do not flow directly and

immediately from an injurious act, but that result indirectly from the act.'" *Safe Auto*

*Ins. Co. v. Berlin*, 991 A.2d 327, 333 n.2 (Pa. Super. 2010).

> The determination of damages is a factual question to be decided by the fact-finder.  The fact-finder must assess the testimony, by weighing the evidence and determining its credibility, and by accepting or rejecting the estimates of the damages given by the witnesses.  Although the fact-finder may not render a verdict based on sheer conjecture or guesswork, it may use a measure of speculation in estimating damages.  The fact-finder may make a just and reasonable estimate of the damage based on relevant data, and in such circumstances may act on probable, inferential, as well as direct and positive proof.
>
> *Judge Tech. Servs., Inc. v. Clancy*, 813 A.2d 879, 885 (Pa. Super. 2002) (citation omitted).

*Discover Bank v. Booker*, 259 A.3d 493, 497 (Pa. Super. 2021).

In the instant matter, Petitioners' damages consist of lost profits, which

are often consequential damages.  However,

> [l]ost profits . . . are not the only form of consequential damages and not all lost profits constitute consequential damages.  Certain lost profits can in fact be "direct" damages.  A good example is a construction contract.  If a property owner wrongfully terminates a construction contract with the contractor, the direct damages that naturally arise from that wrongful termination are the "profits necessarily inherent in the contract," i.e., the "net profit to which the contractor would have been entitled had full performance of the contract been permitted." Similarly, **if a breach foreseeably and naturally**

---

[28] This Court acknowledges that its unreported memorandum opinions may only be cited "for [their] persuasive value, but not as binding precedent."  Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

17

> **deprives the non-breaching party of profits that would have been earned in the ordinary course of business and not under special circumstances**, **those lost profits may also constitute direct damages rather than consequential damages**.

Glenn D. West, Sara G. Duran, *Reassessing the "Consequences" of Consequential Damage Waivers in Acquisition Agreements*, 63 Bus. Law. 777, 792 (2008) (emphasis added; footnotes omitted). Therefore, "[l]ost profits, though often consequential, can come in the form of direct damages. . . . [W]hether lost profits are direct or consequential damages turns on the nature of the . . . circumstances." Cindy Saiter, Sameer Hashmi, *Consequential Damages or Direct Damages-What Difference Does It Make in the Realm of Lost Profits?*, 38 Corp. Couns. Rev. 63, 69 (2019). "'There is no bright-line rule that lost profits always constitute consequential damages.'" *Id.* at 70. Accordingly, whether Petitioners' damages are "incidental to the specific relief being sought," *id.*, is a matter for Petitioners to prove.

> The general rule of law applicable for loss of profits in both contract and tort actions allows such damages where (1) there is evidence to establish them with **reasonable certainty**, (2) there is evidence to show that they were the **proximate consequence** of the wrong; and, in the contract actions, that they were reasonably foreseeable.
>
> *Birth C[tr.] v. St. Paul Co., Inc.*, . . . 787 A.2d 376, 387-88 n.5 ([Pa.] 2001) (quoting *Delahanty v. First P[a.] Bank, N.A.*, 464 A.2d 1243, 1258 ([Pa. Super.] 1983)).

*Co. Image Knitware, Ltd. v. Mothers Work, Inc.*, 909 A.2d 324, 336 (Pa. Super. 2006) (emphasis added). Accordingly, Section 8303 of the Judicial Code allows Petitioners to recover damages to the extent Petitioners can prove them.

**Interest**

As successful mandamus plaintiffs, Petitioners may be entitled to interest on their costs and damages at a legal rate of 6% per annum. *See* Section 202 of the Act of January 30, 1974, P.L. 13 (Act 6), *as amended*, 41 P.S. § 202.[29]

Generally, "the Commonwealth is not liable to pay interest unless bound to do so by statute or by contract of its executive officers[,]" *Indep. Oil & Gas Ass'n of Pa. v. Pa. Pub. Util. Comm'n*, 804 A.2d 693, 704 (Pa. Cmwlth. 2002), and "interest is . . . allowed only when payment has been withheld after the duty of a party to discharge the debt has become fixed." *Id.*; *see also Twp. of Marple v. Weidman*, 613 A.2d 94, 95 (Pa. Cmwlth. 1992) ("This Court has held that a mandamus action can include an award of interest against the Commonwealth when the Auditor General, even in good faith, delays payments."); *Temple Univ.* However, this Court has also ruled that "[i]f no obligation arises under either statute or contract, we must next determine whether [the Commonwealth agency] is under an independent obligation, by virtue of the common law of this Commonwealth, to pay [] interest[.]" *Braig v. Pa. State Emps.' Ret. Bd.*, 682 A.2d 881, 885 (Pa. Cmwlth. 1996).

The Pennsylvania Superior Court has held:

The safest and fairest way for a court to decide questions pertaining to interest is according to a plain and simple consideration of justice and fair dealing. Since plaintiffs

---

[29] Section 202 of Act 6 provides:

Reference in any law or document enacted or executed heretofore or hereafter to "legal rate of interest" and reference in any document to an obligation to pay a sum of money "with interest" without specification of the applicable rate shall be construed to refer to the rate of interest of six per cent per annum.

41 P.S. § 202.

> are entitled to damages from defendants . . . and because it was found as a fact that defendants' dilatory tactics caused financial harm to plaintiffs[,] we also find that plaintiffs are entitled to interest for deprivation of their money . . . .

*Remic v. Berlin*, 426 A.2d 153, 154 (Pa. Super. 1981) (citation omitted). Thus, if Petitioners can prove that the PLCB's delay in establishing the SO program caused Petitioners financial harm, they would be entitled to interest on their costs and damages, the amount of which would be fixed based on Petitioners' damages.

### Attorneys' Fees

MFW and A6 request that this Court grant their request for $310,821.50, which represents their combined attorneys' fees from the moment they engaged counsel through the filing of the Damages Application.[30] The PLCB retorts that Petitioners are not entitled to attorneys' fees merely because the PLCB advanced an argument that was ultimately unsuccessful; this Court is not authorized to award attorneys' fees pursuant to Pennsylvania Rule of Appellate Procedure (Rule) 2744; Section 2503 of the Judicial Code, 42 Pa.C.S. § 2503, does not apply here because the PLCB did not engage in vexatious conduct, and its defense was not arbitrary, vexatious, or in bad faith.

"Damages under Section 8303 [of the Judicial Code] do[] not encompass an award for reasonable counsel fees[.]" *Maurice A. Nernberg & Assocs.*, 920 A.2d at 970 n.5. However, regarding attorneys' fees, "Pennsylvania law embodies the American [R]ule," *Doctor's Choice Physical Med. & Rehab. Ctr., P.C. v. Travelers Pers. Ins. Co.*, 128 A.3d 1183, 1189 (Pa. 2015), which "states that a litigant cannot recover counsel fees from an adverse party unless there is express statutory authorization, a clear agreement of the parties or some other established

---

[30] Petitioners represent that the time spent by counsel solely on Bloomsday Café's behalf has been removed from Petitioners' attorneys' fees calculation. *See* Damages Appl. at 16 n.7.

exception." *Mosaica Acad. Charter Sch. v. Dep't of Educ.*, 813 A.2d 813, 822 (Pa. 2002). Because the parties do not agree, this Court must determine whether there is express statutory authorization or another established exception that would allow the imposition of attorneys' fees in this case.

"In Pennsylvania, the American Rule is embodied in [Section 1726(a)(1) of the Judicial Code,] 42 Pa.C.S. § 1726(a)(1)[.]" *Mosaica Acad. Charter Sch.*, 813 A.2d at 822. Section 1726(a)(1) of the Judicial Code declares: "Attorney[]s['] fees are not an item of taxable costs except to the extent authorized by [S]ection 2503 [of the Judicial Code, 42 Pa.C.S. § 2503] (relating to right of participants to receive counsel fees)." 42 Pa.C.S. § 1726(a)(1); *see also Twp. of Marple*, 613 A.2d at 95 ("[A]ny claim for counsel fees by a successful plaintiff in a mandamus action should be awarded only after a consideration of the factors set forth in [S]ection 2503 [of the Judicial Code].").

> Section 2503 of the Judicial Code specifies, in pertinent part:
>
> The following participants shall be entitled to a reasonable counsel fee as part of the taxable costs of the matter:
>
> . . . .
>
> (7) Any participant who is awarded counsel fees as a sanction against another participant **for dilatory, obdurate or vexatious conduct during the pendency of a matter**.
>
> . . . .
>
> (9) Any participant who is awarded counsel fees because the **conduct of another party in commencing the matter or otherwise was arbitrary**, **vexatious or in bad faith**.

42 Pa.C.S. § 2503 (emphasis added). "[A]n award for counsel fees under Section 2503 [of the Judicial Code] is meant to compensate the innocent litigant for costs caused by the actions of the opposing party." *Maurice A. Nernberg & Assocs.*, 920

21

A.2d at 972. Specifically, under Section 2503(7) and (9) of the Judicial Code, "attorney[]s['] fees may be appropriate for misconduct occurring in commencement of or during the pendency of statutory appeals." *Dep't of Transp., Bureau of Driver Licensing v. Smith*, 602 A.2d 499, 504 (Pa. Cmwlth. 1992).

> This Court has further interpreted that
>
> [t]he phrase 'or otherwise' in [Section 2503(9) of the Judicial Code] refers to **misconduct in the raising of defenses**, and cannot be construed to refer to the [Commonwealth agency's] action before the commencement of the case in court. *Smith*.

*Norris v. Commonwealth*, 634 A.2d 673, 676 (Pa. Cmwlth. 1993) (emphasis added). Accordingly, "[Section 2503 of the Judicial Code], by its very terms, is a 'taxable costs' provision, thereby relating to the conduct of a party at some point during the litigation process."[31] *Bucks Cnty. Servs., Inc. v. Phila. Parking Auth.*, 71 A.3d 379, 393 (Pa. Cmwlth. 2013).

> This Court acknowledges that Rule 2744 also provides:
>
> In addition to other costs allowable by general rule or Act of Assembly, an appellate court may award as further costs damages as may be just, including
>
> (1) a reasonable counsel fee and
>
> (2) damages for delay at the rate of 6% per annum in addition to legal interest,
>
> if it determines that an appeal is frivolous[32] or taken solely for delay or that the conduct of the participant against whom costs are to be imposed is dilatory, obdurate or vexatious. The appellate court may remand the case to

---

[31] The term "litigation" is defined as "[t]he process of carrying on a lawsuit." Black's Law Dictionary 1017 (9th ed. 2009).

[32] A frivolous appeal under Rule 2744 is one that has no basis in law or fact. *See Schultz v. Schultz*, 184 A.3d 168 (Pa. Super. 2018).

the trial court to determine the amount of damages authorized by this [R]ule.

Pa.R.A.P. 2744. However, because Rule 2744 addresses *appeals*, and this matter is before the Court in its *original jurisdiction*, Petitioners are not entitled to attorney's fees thereunder.

Notably, neither Rule 2744 nor the Judicial Code specifically define "dilatory, obdurate or vexatious conduct[.]" *See* 42 Pa.C.S. §§ 102, 2503; *see also* Pa.R.A.P. 2744. Section 1903(a) of the SCA provides that when words in a statute are undefined, they must be accorded "their common and approved usage[.]" 1 Pa.C.S. § 1903(a). "Where a court needs to define an undefined term, it may consult definitions in statutes, regulations or the dictionary for guidance, although such definitions are not controlling." *Adams Outdoor Adver., LP v. Zoning Hearing Bd. of Smithfield Twp.*, 909 A.2d 469, 483 (Pa. Cmwlth. 2006). Black's Law Dictionary 1701 (9th ed. 2009) defines *vexatious* **conduct** to be "**without reasonable or probable cause or excuse**; **harassing**; **annoying**." (Emphasis added.)

According to the Pennsylvania Superior Court,

> [g]enerally speaking, '**obdurate**' **conduct** may be defined in this context as '**stubbornly persistent in wrongdoing**.' [Webster's Ninth New Collegiate Dictionary] 815 (1987). Conduct is '**dilatory**' where the record demonstrates that counsel displayed a **lack of diligence** that delayed proceedings unnecessarily and caused additional legal work. *See Gertz v. Temple Univ.*, . . . 661 A.2d 13, 17 n.2 ([Pa. Super.] 1995). Although disposition of claims under [Section 2503(7) of the Judicial Code] generally requires an evidentiary hearing, no hearing is necessary where the facts are undisputed.

*In re Est. of Burger*, 852 A.2d 385, 391 (Pa. Super. 2004) (emphasis added), *aff'd*, 898 A.2d 547 (Pa. 2006).

In addition, although the Judicial Code does not define "arbitrary," the Pennsylvania Supreme Court has ruled that "[a]n opponent's conduct has been

23

deemed to be '**arbitrary**' within the meaning of the statute if such **conduct is based on random or convenient selection or choice rather than on reason or nature**." *Thunberg v. Strause*, 682 A.2d 295, 299 (Pa. 1996) (emphasis added). The term "bad faith" used in Section 2503(9) of the Judicial Code means "**fraud**, **dishonesty or corruption**." *Pa. State Police, Bureau of Liquor Control Enf't v. Benny Enters.*, 669 A.2d 1018, 1022 (Pa. Cmwlth. 1995) (emphasis added).

Importantly, this Court *en banc* has previously ordered a Commonwealth agency - the Pennsylvania Department of Education (Department) - to pay attorneys' fees relative to a mandamus action, on the basis that the Department's refusal to withhold funds or conduct a hearing as statutorily mandated, was arbitrary, dilatory, and obdurate. *See Richard Allen Preparatory Charter Sch.*; *see also KIPP Phila. Charter Sch.* Accordingly, Petitioners would be entitled to attorneys' fees if the PLCB's conduct during the pendency of the litigation (or its appeal to the Pennsylvania Supreme Court) was without reasonable cause, stubbornly persistent in wrongdoing, and/or caused unnecessary delay, *or* its defense had no reasonable basis (i.e., no basis in law or fact).

This Court, having determined that the PLCB had a clear and unambiguous statutory duty to implement a procedure to process direct shipment SOs by June 1, 2017, *see MFW I*, and, given that this Court issued *MFW I* in May 2020, and the Pennsylvania Supreme Court affirmed that decision in March 2021, yet the PLCB has not yet fulfilled that duty, concludes that the PLCB's initial inaction was, at the very least, arbitrary, and its ongoing refusal to implement a procedure to process direct shipment SOs and continuing to assess handling fees is dilatory and obdurate. Accordingly, MFW and A6 are entitled to attorneys' fees from the PLCB related to their mandamus action.

Therefore, the PLCB is liable for Petitioners' costs. The PLCB is also liable for Petitioners' damages to the extent Petitioners can prove them, plus

associated interest on their costs and damages, and MFW and A6 are entitled to attorneys' fees.

## Conclusion

Based on the foregoing, Petitioners' Damages Application is granted. However, the PLCB is hereby permitted to undertake discovery and/or request a hearing limited to Petitioners' damages and interest, and MFW's and A6's attorneys' fees.

_____
ANNE E. COVEY, Judge

25

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

MFW Wine Co., LLC, A6 Wine     :
Company, and GECC2 LLC d/b/a     :
Bloomsday Cafe,     :
          Petitioners     :
     :
        v.     :
     :
Pennsylvania Liquor Control Board,     :    No. 251 M.D. 2020
          Respondent     :

## O R D E R

AND NOW, this 27th day of May, 2022, MFW Wine Co., LLC's, A6 Wine Company's, and GECC2 LLC d/b/a Bloomsday Café's (collectively, Petitioners) Application for Relief Seeking Damages, Costs, Interest and Attorneys' Fees is GRANTED.

The Pennsylvania Liquor Control Board (PLCB) has 20 days from the date of this Order to file an Application with this Court to request a hearing on Petitioners' damages. The PLCB shall serve discovery request(s), if any, related to the issue of Petitioners' damages 20 days from the date of this Order and all discovery shall be completed within 60 days of the date of this Order.

The PLCB's Application for Post-Submission Communication is DENIED.

                        _____
                        ANNE E. COVEY, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

MFW Wine Co., LLC, A6 Wine : 
Company, and GECC2 LLC : 
d/b/a Bloomsday Cafe, : 
 : 
                  Petitioners : 
 : 
           v. : No. 251 M.D. 2020
 : Argued: November 17, 2021
Pennsylvania Liquor Control Board, : 
 : 
              Respondent : 


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
                  HONORABLE PATRICIA A. McCULLOUGH, Judge
                  HONORABLE ANNE E. COVEY, Judge
                  HONORABLE MICHAEL H. WOJCIK, Judge
                  HONORABLE CHRISTINE FIZZANO CANNON, Judge


DISSENTING OPINION
BY JUDGE WOJCIK             FILED: May 27, 2022


      I dissent. I do not agree that the Pennsylvania Liquor Control Board (PLCB) is a "person" subject to damages under Section 8303 of the Judicial Code, 42 Pa. C.S. §8303 (Section 8303). Therefore, I would deny the Application for Relief Seeking Damages, Costs, Interest, and Attorneys' Fees (Damages Application) filed by MFW Wine Co., LLC, A6 Wine Company, and GECC2 LLC d/b/a/ Bloomsday Café (collectively, Petitioners) against Respondent Pennsylvania Liquor Control Board (PLCB).

      Section 8303 of the Judicial Code provides: "A *person* who is adjudged in an action in the nature of mandamus to have failed or refused without lawful

justification to perform a duty required by law shall be liable in damages to the person aggrieved by such failure or refusal."  42 Pa. C.S. §8303 (emphasis added). Although the Judicial Code does not define "person," Section 1991 of the Statutory Construction Act of 1972 (SCA), 1 Pa. C.S. §1991, creates a default definition for the term "person" that excludes "the Commonwealth."  Specifically, Section 1991 of the SCA provides:

> The following words and phrases, when used in any statute finally enacted on or after September 1, 1937, *unless the context clearly indicates otherwise*, shall have the meanings given to them in this section:
>
> * * *
>
> "Person." Includes a corporation, partnership, limited liability company, business trust, other association, government entity (*other than the Commonwealth*), estate, trust, foundation or natural person.

1 Pa. C.S. §1991 (emphasis added).  Section 1991 of the SCA defines "the Commonwealth" as "[t]he Commonwealth of Pennsylvania."  *Id.*

As our Supreme Court has explained, the conditional language in the definition section means that "the General Assembly contemplated that there might be instances in the [relevant statute] where a term defined in [the definition section] has a meaning that differs from the definition given it, and *directed that attention be paid to what surrounds the term* in order to determine whether or not the [definition section's] definition applies."  *Pennsylvania Associated Builders and Contractors, Inc. v. Department of General Services*, 932 A.2d 1271, 1279 (Pa. 2007) (emphasis added).[1]

---

[1] We have previously declined to rigidly apply the SCA's default definitions where the context indicated otherwise.  *See Fox Chapel Area School District v. Dunlap*, 417 A.2d 1329, 1330 **(Footnote continued on next page…)**

Petitioners assert that Section 8303 only shields "the Commonwealth" itself from monetary damages incidental to a mandamus action and does not extend to Commonwealth parties or agencies. The PLCB counters that the term "Commonwealth" may be fairly construed as referring to Commonwealth entities or parties, including agencies like the PLCB. Because the meaning of this term is crucial to the provision, and it is susceptible of two reasonable constructions, it is ambiguous. *See A.S. v. Pennsylvania State Police*, 143 A.3d 896, 905-06 (Pa. 2016) ("A statute is ambiguous when there are at least two reasonable interpretations of the text."); *Nardone v. Department of Transportation, Bureau of Driver Licensing*, 130 A.3d 738, 743 (Pa. 2015) ("[A] statute is ambiguous where different interpretations of statutory language are plausible."). Accordingly, I enlist principles of statutory interpretation to aid my construction.

"The polestar in our quest is to ascertain and effectuate the intent of the General Assembly." *Woodford v. Insurance Department*, 243 A.3d 60, 73 (Pa. 2020) (citing 1 Pa. C.S. §1921(a)). In ascertaining legislative intent, the provision at issue is to be read "together and in conjunction" with the remaining statutory language, "and construed with reference to the entire statute." *Allstate Life Insurance Co. v. Commonwealth*, 52 A.3d 1077, 1080 (Pa. 2012). When a term is ambiguous, Courts may consider the following factors in determining the General Assembly's intent:

(1) The occasion and necessity for the statute.

---

(Pa. Cmwlth. 1980) (declining to apply default definition of "year" in public school context); *Warner-CCC Inc. v. City of Altoona*, 374 A.2d 987, 988-89 (Pa. Cmwlth. 1977) (declining to apply default definition of "person" where the context intended to be limited to natural persons); *see also Habecker v. Nationwide Insurance Co.*, 445 A.2d 1222, 1227 (Pa. Super. 1982) (declining to apply default definition of "year" in context of "aggregate period of one year").

(2) The circumstances under which it was enacted.

(3) The mischief to be remedied.

(4) The object to be attained.

(5) The former law, if any, including other statutes upon the same or similar subjects.

(6) The consequences of a particular interpretation.

(7) The contemporaneous legislative history.

(8) Legislative and administrative interpretations of such statute.

1 Pa. C.S. §1921(c). In addition, "when a court of last resort has construed the language used in a statute, the General Assembly in subsequent statutes on the same subject matter *intends the same construction to be placed upon such language*." 1 Pa. C.S. §1922(4) (emphasis added); *accord Pennsylvania State Police, Bureau of Liquor Control Enforcement v. Jet-Set Restaurant, LLC*, 191 A.3d 817, 823 (Pa. 2018).

In order to ascertain the General Assembly's intent behind Section 8303 and the meaning of the exclusion of "the Commonwealth" from the definition of "person," a review of the doctrine of sovereign immunity and its history is required. The doctrine of sovereign immunity is deeply rooted in our Commonwealth. *Dorsey v. Redman*, 96 A.3d 332, 340 (Pa. 2014). Our Constitution provides that "[s]uits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct." Pa. Const. art. I, §11. The doctrine of sovereign immunity developed as a common law doctrine. *Dorsey*, 96 A.3d at 340. The underlying purpose behind sovereign immunity has always been "*to protect the fiscal security of the government by shielding the Commonwealth and its*

*agents"* from financial liability. *Id.* (emphasis added). Suits that sought "to compel affirmative action on the part of state officials or to obtain money damages or to recover property from the Commonwealth" fell within the rule of immunity, whereas suits which simply sought "to restrain state officials from performing affirmative acts" did not. *Philadelphia Life Insurance Co. v. Commonwealth*, 190 A.2d 111, 114 (Pa. 1963); *see Land Holding Corp. v. Board of Finance & Revenue*, 130 A.2d 700, 703 (Pa. 1957) ("The right to sue the Commonwealth for the recovery of money or taxes alleged to have been erroneously paid to it exists only by the grace of the Legislature.").

In *Mayle v. Pennsylvania Department of Highways*, 388 A.2d 709, 716 (Pa. 1978), our Supreme Court examined the constitutional basis for immunity and determined that the Pennsylvania Constitution is "neutral" because it "neither requires nor prohibits sovereign immunity." *Accord Dorsey*, 96 A.3d at 340. Rather, it "vests authority in the General Assembly to determine the matters in which the government shall be immune." *Id.*; *see Mayle*, 388 A.2d at 717 ("[T]he Framers of 1790 intended to allow the Legislature, if it desired, to choose cases in which the Commonwealth should be immune, but did not intend to grant constitutional immunity to the Commonwealth."). Because sovereign immunity was a common law precept developed by the judiciary, the Supreme Court saw fit to "abolish the doctrine of sovereign immunity and overrule all inconsistent cases." *Mayle*, 388 A.2d at 720; *see Dorsey*, 96 A.3d at 340 (recognizing the abolition of sovereign immunity in *Mayle*). As a result, the breadth of sovereign immunity was a matter for legislative, rather than judicial, determination. *See Dorsey*, 96 A.3d at 340; *Mayle*, 388 A.2d at 717.

In response, "[t]he General Assembly was swift to react restoring sovereign immunity" by codifying the preexisting immunity scheme that the Supreme Court in *Mayle* had abolished. *Dorsey*, 96 A.3d at 340. The General Assembly specifically reaffirmed the historical concept of sovereign immunity by enacting 1 Pa. C.S. §2310. *See Bonsavage v. Borough of Warrior Run*, 676 A.2d 1330 (Pa. Cmwlth. 1996). The General Assembly declared that "*the Commonwealth, and its officials and employees acting within the scope of their duties*, shall continue to enjoy sovereign immunity and official immunity and remain *immune from suit except as the General Assembly shall specifically waive the immunity*." 1 Pa. C.S. §2310 (emphasis added). "When the General Assembly specifically waives sovereign immunity, a claim *against the Commonwealth and its officials and employees* shall be brought only in such manner and in such courts and in such cases as directed *by the provisions of Title 42 (relating to judiciary and judicial procedure) . . . .*" *Id.* (emphasis added).

Title 42 includes Sections 8521 through 8527 of the Judicial Code, commonly referred to as the Sovereign Immunity Act, 42 Pa. C.S. §§8521-8527. Section 8522 of the Judicial Code specifically waives sovereign immunity as a bar to all tort actions against "Commonwealth parties" for damages arising out of a negligent act where damages would be recoverable under common law or statute, in 10 enumerated exceptions. 42 Pa. C.S. §8522(b). Of the enumerated exceptions, the General Assembly specifically waived the defense of sovereign immunity with regard to the sale of liquor at Pennsylvania liquor stores by employees of the PLCB, long recognized as a Commonwealth party. 42 Pa. C.S. §8522(b)(7). Negligence actions under Section 8522 are in the nature of a trespass in that they seek monetary damages as redress for an unlawful injury. *Fawber v. Cohen*, 532 A.2d 429, 432

(Pa. 1987). There is no dispute that Petitioners' claim here does not fit within the waiver of immunity contained in Section 8522, because they do not allege any "negligent act" falling within any of the enumerated exceptions to immunity.

However, Title 42 also includes Section 8303 as well as the Declaratory Judgments Act, 42 Pa. C.S. §§7531-7541. "[T]he law is clear that sovereign immunity does not bar either mandamus or declaratory judgment actions." *Brimmeier v. Pennsylvania Turnpike Commission*, 147 A.3d 954, 961 (Pa. Cmwlth. 2016), *aff'd*, 161 A.3d 253 (Pa. 2017). "Mandamus will only lie to compel official performance of a ministerial act or mandatory duty where there is a clear legal right in the [petitioner], a corresponding duty in the [respondent], and a lack of any other adequate and appropriate remedy at law." *Delaware River Port Authority v. Thornburgh*, 493 A.2d 1351, 1355 (Pa. Cmwlth. 1985).

In order to maintain a mandamus action against the Commonwealth, a party must name the specific Commonwealth agency, officer or employee from which relief is sought. *See Finn v. Rendell*, 990 A.2d 100, 105-06 (Pa. Cmwlth. 2010). In *Finn*, we recognized that the Commonwealth and its various agencies and officers are separate entities and that the Commonwealth of Pennsylvania, itself, is not a Commonwealth agency. *Finn*, 990 A.2d at 105 (citing *Tork–Hiis v. Commonwealth*, 735 A.2d 1256, 1257 (Pa. 1999); *Bonsavage*, 676 A.2d at 1331). It is the very "nature of the Commonwealth as an entity separate from its agencies and officers" that makes mandamus actions against the Commonwealth itself "a practical impossibility." *Id.* We explained:

> The essence of an action in mandamus is that a specific actor has a non-discretionary duty to perform a particular act. *A request that the Commonwealth be ordered to do something begs the question which of the many actors comprising state government is to be held accountable.*

MHW-7

> *Since merely naming the Commonwealth is insufficient to state a claim against a Commonwealth party,* Tork–Hiis, *it would seem self-evident that if a specific state party can be identified as having a mandatory or ministerial duty, that party must be the named defendant, both in order to make out a cause of action in mandamus and to effectuate enforcement of any ensuing order.*

*Id.* at 106 (emphasis added).

When the logic of *Finn* is applied in the context of Section 8303, only a "person" who is "adjudged in an action in the nature of mandamus to have failed or refused without lawful justification to perform a duty required by law shall be liable in damages to the person aggrieved by such failure or refusal." 42 Pa. C.S. §8303. According to *Finn*, the Commonwealth itself is not that "person" for all intents and purposes. Rather, it is the various state actors acting on behalf of the Commonwealth that "have failed or refused without lawful justification to perform a duty required by law." *See* 42 Pa. C.S. §8303; *Finn*, 990 A.2d at 105-06. Therefore, within the context of Section 8303, "the Commonwealth" is broader than just the Commonwealth itself and extends to the specific state party having a mandatory or ministerial duty and against whom special mandamus relief was obtained. Such an interpretation is consistent with the canons of statutory construction and the longstanding principle that suits that seek to obtain money damages from Commonwealth parties are within the rule of immunity, unless specifically waived. It is also consistent with the Supreme Court's interpretation of "person" in *Commonwealth v. Runion*, 662 A.2d 617, 618 (Pa. 1995).

In *Runion*, our Supreme Court examined whether Section 1991's definition of a "person" and whether the exclusion of "the Commonwealth" extended to "governmental agencies" of the Commonwealth within the context of Section 1106 of the Crimes Code, 18 Pa. C.S. §1106. At issue in *Runion* was

MHW-8

whether the Department of Public Welfare[2] (DPW), a Commonwealth agency, could be considered a "victim" under Section 1106 of the Crimes Code so as to be entitled to restitution from an offender. *Runion*, 662 A.2d at 618. Section 1106(a) of the Crimes Code authorized restitution for "victims." 18 Pa. C.S. §1106(a). Section 1106(h) of the Crimes Code defined "victim" as "[a]ny *person*, except an offender, who suffered injuries to his person or property as a direct result of the crime." 18 Pa. C.S. §1106(h). The Crimes Code did not define "person." *See id.*

Applying Section 1991 of the SCA's default definition of "person," the Supreme Court determined that DPW was not a "person." *Runion*, 662 A.2d at 619. The Supreme Court opined that "*governmental agencies of this Commonwealth are excluded from the definition of 'person' where the legislature has not otherwise spoken.*" 662 A.2d at 619 (emphasis added) (citing 1 Pa. C.S. §1991). The Supreme Court explained that although a contrary interpretation would favor public policy of rehabilitation of an offender through restitution, "such a reading would not be consistent with our rules requiring strict interpretation of penal provisions . . . ." *Id.* Thus, the Supreme Court concluded that because DPW, "*as a Commonwealth entity*," was "expressly excluded from the definition of 'person'" under the SCA, it could not be considered as a "victim" and was not entitled to restitution from the offender. *Id.* at 621 (emphasis added).

*Runion* is instructive here. Because only a "person" may be liable for mandamus damages under Section 8303's clear terms, "governmental agencies of this Commonwealth" are not so liable. *Id.* The PLCB is a governmental agency of the Commonwealth protected by sovereign immunity. *Garrettson v.*

---

[2] The "Department of Public Welfare" was redesignated as the "Department of Human Services" in 2014. *See* Section 103 of Human Services Code, Act of June 13, 1967, P.L. 31, *as amended*, added by the Act of September 24, 2014, P.L. 2458, 62 P.S. §103.

*Commonwealth*, 405 A.2d 1146, 1148 (Pa. Cmwlth. 1979). Therefore, for purposes of Section 8303, the PLCB is not a "person" liable for mandamus damages.

Although the General Assembly legislatively superseded *Runion* by revising Section 1106 of the Crimes Code, it did so strategically by extracting the term "person" from the definition of "victim" in the Crimes Code and by specifically entitling the government agencies and insurance companies to seek restitution where either has provided compensation to the victim of a crime. Although the General Assembly has amended Section 1991 of the SCA, it has not altered Section 1991's default definition of "person" or "Commonwealth." *See* 1 Pa. C.S. §1922(4); *Jet-Set Restaurant, LLC*, 191 A.3d at 823; *see also Buehl v. Horn*, 728 A.2d 973, 980 (Pa. Cmwlth. 1999) ("The General Assembly is presumed to concur with the interpretation placed upon a statute if it does not amend the statute within a reasonable time.").

As the Majority opinion points out, *Runion* also involved the interpretation of "person" in a penal statute. According to the tenets of statutory construction, penal statutes must be "strictly construed." 1 Pa. C.S. §1928(b)(1). Generally, statutes that are not in derogation of the common law and that do not fall within one of the eight enumerated classifications requiring strict construction under Section 1928(b) of the SCA must "be liberally construed to effect their objects and to promote justice." 1 Pa. C.S. §1928(c).

However, there is another fundamental tenet of statutory construction that must be applied here. Namely, "statutes in derogation of sovereignty should be construed strictly in favor of the sovereign." *Clipper Pipe & Service, Inc. v. Ohio Casualty Insurance Co.*, 115 A.3d 1278, 1282 (Pa. 2015); *see Brimmeier*, 147 A.3d at 961 ("Because immunity is the rule, we must narrowly construe any exceptions

thereto."). Because the definition of a "person" within Section 8303 implicates the Commonwealth's liability to monetary damages, it must be strictly construed in favor of the sovereign. *See Clipper Pipe & Service, Inc.*, 115 A.3d at 1282; *Brimmeier*, 147 A.3d at 961.

Although mandamus actions are permitted against the Commonwealth and its parties, the General Assembly has not "specifically waived" sovereign immunity with regard to monetary damages in connection thereto as it has done elsewhere. *See, e.g.*, 42 Pa. C.S. §8522. Rather, it has merely excluded "the Commonwealth" from the definition of "person." As illustrated above in *Runion*, Section 1991 of the SCA's definition of "person" is a default definition available for use in a wide variety of statutory contexts in which the term "person" is not defined and has no particular connection to immunity statutes. Within the context of Section 8303, and absent an express waiver of immunity, it is far more logical that the General Assembly intended to shield the Commonwealth generally, including the actual Commonwealth parties defending the mandamus actions from liability from monetary damages, not just the Commonwealth itself.

While I join in the Majority's admonition of PLCB's conduct and recognize the inequity of Petitioners' position, the monetary relief that Petitioners seek is simply not available against the Commonwealth. As our Supreme Court has opined:

> Understandably, some immunity applications may be distasteful to those who may discern government wrongdoing, or at least unremediated collateral injury to private concerns resulting from governmental policy changes. In light of the constitutional basis for the General Assembly's allocation of immunity, however, the area implicates the separation of powers among the branches of government also crafted by the framers. Thus, in absence

MHW-11

> of constitutional infirmity, courts are not free to circumvent the Legislature's statutory immunity directives pertaining to the sovereign.

*Scientific Games International, Inc. v. Department of Revenue*, 66 A.3d 740, 755 (Pa. 2013) (footnote omitted).

In short, because the PLCB is part of "the Commonwealth" and is not a "person," it is not liable for damages under Section 8303. For these reasons, unlike the Majority, I would deny the Petitioners' Damages Application.

_____
MICHAEL H. WOJCIK, Judge

President Judge Cohn Jubelirer joins in this dissent.

MHW-12